494 So.2d 550 (1986)
STATE of Louisiana
v.
Lonnie KENNEDY.
No. KA 85 1360.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
Writ Denied September 26, 1986.
Bryan Bush, Dist. Atty., Baton Rouge, by Don Wall & Douglas Simmons, Asst. Dist. Attys., for plaintiff appellee.
Public Defenders' Office, Baton Rouge, for defendant appellant.
Before GROVER L. COVINGTON, C.J., and WATKINS and SHORTESS, JJ.
WATKINS, Judge.
Lonnie Kennedy was charged by indictment with the second degree murder of Martie Pantinople, in violation of LSA-R.S. 14:30.1. He pled not guilty, elected trial by jury, and was found guilty as charged. He *551 received a mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. An out of time appeal was granted by the trial court. The defendant alleges two assignments of error, as follows:
1. The trial court erred in allowing into evidence exhibit S-2.
2. The verdict is contrary to the law and/or evidence.
Assignment of error number 1 was not briefed on appeal and is, therefore, considered abandoned. Uniform Rules Courts of AppealRule 2-12.4.
On the evening of October 29, 1982, Lonnie Kennedy shot his girl friend, Martie Pantinople, with a .22 caliber pistol. The shooting took place in the parking lot of the complex where they shared an apartment located on Bard Avenue in Baton Rouge, Louisiana. The couple had been arguing for twenty to thirty minutes before the shooting took place.
Apparently, Martie Pantinople had moved out of the apartment about a week before this incident taking their baby, Lonnie, Jr., with her. The argument which resulted in the fatal shooting began when Ms. Pantinople returned to the apartment to pick up some of her personal effects. Several witnesses who heard various parts of the argument testified that it seemed to center on the issue of whether or not Ms. Pantinople would return to the apartment. Lonnie, Jr.'s name was also mentioned during this argument. Several witnesses testified that during the argument, the defendant chased Ms. Pantinople with the gun and said, "You can get in any car you want to, but I'll still shoot." During the course of the argument, the defendant also threatened to shoot two other people.
Eventually, Ms. Pantinople ended up in the parking lot on her knees, hiding behind a neighbor and begging the defendant not to shoot her. As the defendant approached her, he was spinning the chamber of the pistol. The defendant stopped a few feet away from the victim and rested the pistol on the hood of a small car which was between them. The defendant then turned around and began to walk away when, without warning, he spun around, took a few steps, and fired a single shot at a distance of five to six feet from the victim. The bullet struck the victim in the forehead above the right eyebrow. One state witness testified that the defendant walked over to the victim's body, turned her over with his foot, and asked, "Is the bitch dead?" This witness also testified that the defendant was laughing as he walked away. Another state witness testified that after the shooting, the defendant said (to the victim), "Fuck with me now, bitch."
As the defendant walked away, he told some bystanders that he would be in his apartment when the police came. However, the defendant got on his motorcycle and went for a short ride before returning to the parking lot where upon his return he was immediately arrested. Ms. Pantinople was transported to a local hospital where she died several hours later.
The defendant does not deny that he shot the victim. He claims that he had been drinking heavily that afternoon and evening at a local bar and that he also took one quaalude and three amphetamines while at the bar. The defendant testified that he was sleeping in the apartment when Ms. Pantinople banged loudly on the door. He testified that he answered the door with the pistol in his back pocket because he did not know who was at the door.
According to the defendant, their argument began when Ms. Pantinople explained that she wished to return. The defendant denied threatening to shoot Ms. Pantinople during the course of the argument. He explained that he was spinning the chamber of his pistol in order to scare Ms. Pantinople into leaving him alone. He testified that, in the parking lot, he had begun to walk away from Ms. Pantinople when she said, "You'll never see the baby again." At this point, the defendant stated, "I just snapped. I turned and I fired."
The defendant argues that the trial court erred in accepting a verdict which was contrary *552 to the law and/or evidence. The defendant contends that the jury should have entered the responsive verdict of guilty of manslaughter. In his brief, the defendant states, "Since the evidence at trial establishes the acting under heat of passion by great provocation, there is insufficient evidence to sustain the second degree murder verdict."
At the outset we note that in order to challenge a conviction on the basis of insufficiency of the evidence, the defendant should have proceeded by way of a motion for post-verdict judgment of acquittal. See, La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed in a formal assignment of error.
The standard of review for the sufficiency of evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See, La.C. Cr.P. art. 821; State v. Korman, supra.
In pertinent part, LSA-R.S. 14:30.1 defines second degree murder as:
... the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm;
....
LSA-R.S. 14:10(1) defines specific intent as:
... that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
Specific intent is a state of mind which need not be proven as a fact but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Boyer, 406 So.2d 143, 150 (La.1981). Thus, it is necessary that a determination be made as to whether the circumstances presented support the jury's finding that the defendant had the specific intent to kill or inflict great bodily harm.
At the trial, the defendant introduced testimony that he had been drinking heavily and had taken drugs several hours before the shooting incident. However, on appeal, the defendant seems to have abandoned the issue of intoxication as a defense. The only reference to this "heavy drinking" in the defendant's brief is that when Ms. Pantinople returned to the apartment to pick up some clothes, the defendant "was sleeping off the effects of liquor."
Although the defendant's friend, David Mobley, also testified that the defendant had consumed at least a case of beer and a quaalude before the shooting incident, it cannot be said in this case that the jury's determinations were contrary to the evidence. The defendant rode his motorcycle both before and after the shooting incident. There is no evidence that his operation of the motorcycle was in any way impaired. Furthermore, the witnesses who observed the shooting and the police officers who arrested the defendant all testified that the defendant did not appear to be intoxicated. The issue is simply a question of whom the jury believed.
The defendant contends that the effects of drugs and alcohol, combined with his excited state during the argument, deprived him of the specific intent necessary in a second degree murder conviction. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234, 237 (La. App. 1st Cir.1984), writ not considered, 456 So.2d 161 (La.1984), reconsideration not considered, 458 So.2d 471 (La.1984). The unanimous guilty verdict in this case demonstrates that the jury did not believe that the defendant was so intoxicated as to preclude his having the specific intent indicated by his acts. Considering the evidence, we find that a rational trier of fact could reasonably reject the defense of intoxication and find beyond a reasonable doubt that the defendant specifically intended to kill or do great bodily harm to *553 Ms. Pantinople. See, State v. Foster, 437 So.2d 309 (La.App. 2d Cir.1983), motion for untimely writ application denied, 440 So.2d 734 (La.1983).
LSA-R.S. 14:31 provides, in pertinent part:
Manslaughter is:
(1) A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;
.....
On a previous occasion when Ms. Pantinople had left the defendant and taken Lonnie, Jr. with her, the defendant kidnapped Lonnie, Jr., and was subsequently arrested. The defendant argues that he "snapped" when Ms. Pantinople made the comment that he would never see the baby again. The defendant asserts that he cared for the child very much (as evidenced by the kidnapping incident), and that this comment from the victim coming at the end of their heated argument caused him to lose his self-control.
The jurors were aware of the possibility that they could return a responsive verdict of manslaughter. However, the unanimous jury verdict of guilty in this case demonstrates that the jury concluded either: (1) that the argument was not provocation sufficient to deprive an average person of his self control and cool reflection, or (2) that an average person's blood would have cooled by the time the defendant shot the victim. Furthermore, none of the state's witnesses testified that they heard Ms. Pantinople tell the defendant that he would never see the baby again. Only the defendant seems to have heard this comment about the baby, although two of the state's witnesses were closer to Ms. Pantinople than the defendant at the time she allegedly made the comment.
The jury concluded that this was a case of second degree murder. We have carefully reviewed the record and find that the evidence supports the jury's determination of guilt. We are convinced that when the evidence is viewed in a light most favorable to the state, a rational trier of fact could have concluded beyond a reasonable doubt that the defendant was guilty of second degree murder. See, State v. Booker, 444 So.2d 238 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1227 (La.1984).
For the above reasons, this assignment of error is without merit.
The conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.