512 So.2d 497 (1987)
STATE of Louisiana
v.
Willie HILBURN.
No. 87KA0089.
Court of Appeal of Louisiana, First Circuit.
June 23, 1987.
Rehearing Denied August 26, 1987.
Writ Denied November 30, 1987.
*499 Charles Genco, Asst. Dist. Atty., Amite, for plaintiff-appellee State of La.
Joseph H. Simpson, Amite, for defendant-appellant.
Before SAVOIE, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Defendant, Willie Hilburn, was charged by grand jury indictment with the second degree murder of his wife, Annie Ruth Hilburn, in violation of La.R.S. 14:30.1. He pled not guilty and not guilty by reason of insanity. After a jury trial, defendant was found guilty of the responsive verdict of manslaughter, a violation of La.R.S. 14:31. The trial court sentenced defendant to fourteen years imprisonment at hard labor. He appeals his conviction and sentence, urging eight assignments of error.[1]
*500 FACTS
The record reveals that the victim, Annie Ruth Hilburn, was shot to death in the early morning hours of May 27, 1983, in her home in rural Kentwood, Louisiana. Her body was discovered by her son, Vernon Hilburn, who lived in a trailer adjacent to his parents' house. Vernon had visited his parents some time after 5:30 or 6:00 p.m. on the evening of May 26. When he returned to his trailer that night, both of his parents were at home and his father's car and truck were parked outside. He went to bed at approximately 11:00 p.m. but was awakened during the night by the sound of three gunshots. He got up and saw the taillights of a car leaving and noticed that his father's car was gone. At that time, Vernon went next door, where he discovered his mother's body lying on the floor in the living room. He saw his father's rifle leaning against the wall behind the front door, about a foot away from his mother's body.
At approximately 3:00 a.m., Deputy Sheriff Darwin Givens[2] responded to a call from the Hilburn residence. Upon arrival, he observed the victim lying on the floor with two bullet wounds in her chest. Detective Johnny Jones with the Tangipahoa Parish Sheriff's Office joined Deputy Givens at the scene at approximately 3:45 a.m. Evidence seized from the scene included, among other things, a .30 caliber rifle, a clip containing eleven live rounds of ammunition, two spent cartridges found in the living room, a spent cartridge found in the bedroom, and a bullet which entered the living room wall and lodged in the bathroom wall. There was no sign of a forced entry into the Hilburn residence.
After Detective Jones arrived, Deputy Givens left the scene to look for defendant. He received a radio report that the suspect was seen driving down the road in the direction of his residence. Deputy Givens caught up with defendant and followed his vehicle for about a quarter of a mile before turning on the unit's red lights. When defendant pulled over and stopped, Deputy Givens placed him under arrest and advised him of his Miranda rights. Defendant stepped out of the car, and Givens seized two automatic pistols which defendant carried in his waistband. Deputy Givens testified that defendant's vehicle had not been weaving when he pulled it over; and defendant had no difficulty walking, talking or standing at the time of his arrest.
At approximately 5:00 a.m., in the booking room at the jail, Deputy Givens again advised defendant of his Miranda rights. Defendant filled out and signed a rights form. At approximately 6:30 a.m., Detective Jones also advised defendant of his Miranda rights, and witnessed defendant sign another rights form. Jones testified that at that time defendant stated he wanted to speak to an attorney. Jones further testified that he smelled alcohol on defendant's breath but defendant was alert and coherent. On cross-examination, Jones admitted that he had testified on a prior occasion that defendant had possibly appeared to be intoxicated.
Lawrence McCleary, a State Trooper, testified that he saw defendant some time between 4:00 and 6:00 a.m. on May 27 at the Sheriff's Office. He stated that he did smell alcohol on defendant's breath but defendant was not disoriented and had no difficulty walking, talking or standing.
Carrie Mae Robinson testified at trial that she knew defendant and that she had received money from him in the past. Defendant paid her rent, light bills and phone bills. She stated that during the night of May 27, between midnight and 12:30 a.m., defendant called her and said he was going to blow his wife's head off. Defendant later called her from jail, and told her that he had shot his wife with a rifle. Ms. Robinson further testified that she visited defendant at defendant's house one to two months later. Therein, defendant pointed out to her the bullet hole through the living room wall.
*501 Carrie Mae Robinson admitted at trial that she had blackmailed defendant to obtain more money. In fact, on October 4, 1984, she was charged with extortion. At trial, she testified that she wrote several threatening letters to defendant, as well as to his daughter. She stated that she threatened to tell defendant's family that he killed his wife. She also testified that on one occasion, when she thought she was pregnant, she threatened to tell defendant's family that he was the baby's father.
Rosia Dean Francis testified that she, too, knew defendant and had received money from him for approximately a year. She stated that she saw defendant in a bar a few weeks after his wife's death. She heard defendant tell another man that he killed his wife and that he would kill more people before he went to prison. However, Mr. Travis Dykes and his wife, Kay Dykes, who were hired as investigators by defendant, took a taped statement from Ms. Francis prior to trial. In that statement, she told them that she knew nothing about defendant killing his wife. Ms. Francis testified at trial that she was scared when she gave the statement to Mr. and Mrs. Dykes and that the taped statement is a lie.
After the state rested its case, the defense presented the testimony of Dr. Ralph Maxwell and Dr. Richard Strobach, both of whom were appointed to examine defendant's mental condition in relation to his plea of insanity. Defendant was examined approximately six months after the offense. Both doctors concluded that defendant was competent to stand trial. However, each opined that defendant did not know the difference between right and wrong at the time of the offense due to his state of intoxication. The defense also presented the testimony of defendant's two daughters, his son-in-law, and Kay Dykes.

ASSIGNMENT OF ERROR NO. 1
In the first assignment of error, defendant contends that the state's reference to the sexual relationship between Carrie Mae Robinson and defendant was prejudicial because Carrie Mae Robinson is black and defendant is white. Thus, defendant was deprived of his right to a fair trial.
During the direct examination of Ms. Robinson at trial, the prosecutor asked her if she frequently had sex with defendant, to which she replied affirmatively. The defense objected that the subject matter was irrelevant. Out of the presence of the jury, the state argued that the testimony was relevant to establish the basis of how the witness knew defendant. The court ruled the testimony was inadmissible because irrelevant at that stage of the proceedings. The court, sua sponte, then admonished each juror individually to disregard the question and the answer. Defendant did not move for a mistrial.
"If an objection is sustained, defendant cannot on appeal complain of the alleged error unless at trial he requested and was denied either an admonition to disregard or a mistrial." State v. Michel, 422 So.2d 1115, 1121 (La.1982); State v. Maillian, 464 So.2d 1071, 1076 (La.App. 1st Cir.), writ denied, 469 So.2d 982 (La.1985). In the present case, defense counsel moved for neither an admonition nor a mistrial. The admonition that was given by the trial court was unsolicited. Defendant complains of the prosecutor's questioning, which sought to elicit information concerning the relationship between the witness and defendant. Defense counsel's objection to the same was sustained and the jury was admonished to disregard it. As such, it was incumbent on defense counsel to move for a mistrial under La.C.Cr.P. arts. 770, 771 or 775 if he so desired. Without having requested a mistrial, defendant received all the relief to which he was entitled when the trial court sustained his objection and gave the admonition to the jury. See State v. Kersey, 406 So.2d 555 (La. 1981). Moreover, the prosecutor asked the witness the same question on redirect examination, and the witness again answered in the affirmative. Defense counsel did not object to the question or the answer at that time.
Accordingly, we find this assignment of error without merit.

*502 ASSIGNMENT OF ERROR NO. 2
By assignment of error number two, defendant argues that the admission of defendant's response to Miranda warnings was reversible error. He contends that the response was offered to establish defendant's mental condition and in support of the prosecution's argument that defendant appreciated the criminality of his acts and was able to conform his conduct to the law.
Specifically, defendant in brief directs our attention to the direct examination of Deputy Givens concerning the details of the rights form which was filled out and signed by defendant. This form was introduced into evidence as State Exhibit One, without objection by defense counsel.
Defendant also complains of the direct examination of Detective Jones relative to a second rights form administered to and signed by defendant. This form was introduced into evidence as State Exhibit Thirty-Two, also without objection by defendant. During this questioning, Detective Jones was asked, "Now, after you advised him of his rights, did Mr. Hilburn make any requests of you?" Jones responded, "He said he wanted to speak to an attorney." No objection was made by defense counsel, and questioning continued.
During the cross-examination of defense witness, Dr. Maxwell, the prosecutor made reference to defendant's ability to fill out and sign a rights form. When cross-examining another defense witness, Dr. Strobach, the prosecutor questioned defendant's ability to read his rights, sign a rights form, understand his rights, and request an attorney. Defense counsel made no objection in either instance.
Finally, defendant complains of numerous references made by the prosecutor in closing argument concerning the facts that defendant filled out and signed two rights forms and requested an attorney. The defense did not object to these references during, or after, the prosecutor's closing argument.
Defendant claims that the prosecutor's use of his responses to Miranda warnings to establish his mental condition violated the United States Supreme Court's holding in Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986). Therein, the Court held that the prosecutor's use of postarrest, post-Miranda warnings silence as evidence of sanity violated the Due Process Clause of the Fourteenth Amendment. We note, however, in Wainwright, the prosecutor's references in closing argument to defendant's exercise of his right to remain silent were made over defense counsel's objection. At trial of the present case, defense counsel made no objection to any of the instances of alleged impropriety.
An irregularity or error generally cannot be availed of after verdict unless it was objected to at the time of occurrence and the grounds therefor specified. See La.C.Cr.P. art. 841; State v. Stewart, 486 So.2d 906 (La.App. 1st Cir.1986). Rare exceptions to the application of the contemporaneous objection rule are made in cases in which the error "was so fundamental that it struck at the very essence of the reliability of the fact-finding process." State v. Arvie, 505 So.2d 44, 47 (La.1987). For example, the supreme court refused to apply the contemporaneous objection rule where the trial judge erroneously instructed the jury on the essential elements of the charged crime [State v. Williamson, 389 So.2d 1328 (La.1980)] and where the trial judge failed to give a constitutionally fundamental jury instruction [State v. Green, 493 So.2d 588 (La.1986)]. The circumstances of this case do not substantially affect the reliability of the fact finding process and as such is not an occasion in which we will refuse to apply the contemporaneous objection rule.
Accordingly, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 3
By means of this assignment, defendant argues that it was reversible error to admit into evidence the contents of the reports on which defendant's experts relied to form an opinion as to defendant's sanity. Defendant claims that admission of the witnesses' testimony concerning statements he made *503 to them while being evaluated had the effect of making defendant testify against himself, although he chose not to take the stand at trial.
The two sanity commission members, who were appointed to evaluate defendant on his sanity defense, testified at trial as witnesses for the defense. On cross-examination by the prosecution, Dr. Maxwell testified that his report was based on information provided by defendant. Dr. Strobach testified that his report was based on facts provided by defendant and defense counsel. The prosecutor questioned the doctors about the statements made to them by defendant. Defendant admits in brief that the doctors were allowed to testify as to these statements without objection by defense counsel.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence and the grounds therefor specified. See La.C.Cr.P. art. 841. Moreover, although not admissible as evidence of the truth of the facts stated, a statement by a patient to a physician as to past matters, including past medical history, may be included in the physician's testimony to show the basis for his opinion. State v. Andrews, 369 So.2d 1049 (La.1979). Every expert witness must state the facts upon which his opinion is based. La.R.S. 15:465.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 4
In this assignment of error, defendant argues that it was erroneous for the jury not to find that defendant had carried his burden of proving that he was legally insane at the time of the commission of the offense.
In Louisiana a defendant is presumed sane, and the state is not required to prove sanity. La.R.S. 15:432. A defendant who wishes to negate the presumption must put forth an affirmative defense of insanity and prove his insanity by a preponderance of the evidence. La.C.Cr.P. art. 652; State v. Roy, 395 So.2d 664 (La.1981). Legal insanity in Louisiana means that a defendant has a mental disease or defect which prevents him from distinguishing right from wrong with reference to the conduct which forms the basis for the criminal charge against him. La.R.S. 14:14.
The standard of review applicable when a defendant pleads the affirmative defense of insanity and claims that there is insufficient evidence to support a finding of guilt beyond a reasonable doubt is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could conclude that defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Roy, 395 So.2d at 667.
[I]t is left to the factual determination of the jury to determine whether the defendant was capable of knowing right from wrong with regard to the conduct complained of. All of the evidence, including both expert and lay testimony and conduct and action of the defendant, should be considered by the jury in determining sanity.
State v. Heath, 447 So.2d 570, 575 (La.App. 1st Cir.), writ denied, 448 So.2d 1302 (La. 1984).
At trial, the defense presented two doctors who testified on the sanity issue. Dr. Ralph Maxwell, the coroner and a member of the sanity commission, examined defendant approximately seven months after the offense. Defendant related to Dr. Maxwell that he had a past history of chronic alcoholism. He drank seriously on weekends, to the point where he routinely suffered from blackouts. He allegedly consumed approximately two cases of beer on the night of the homicide. Dr. Maxwell testified that someone who drinks to that extent would find it difficult to remember any of the actions for which he is accused. In Dr. Maxwell's opinion the defendant did not know the difference between right and wrong at the time of the alleged offense.
Dr. Richard Strobach, a psychiatrist, also examined defendant some six months after the incident, as a member of the sanity commission. He diagnosed defendant as a *504 chronic episodic alcoholic. Dr. Strobach believed that defendant could not discern between right and wrong at the time of the alleged offense due to his marked state of intoxication. Defendant told Dr. Strobach that he had no history of emotional problems and had never received psychiatric treatment.
No evidence was introduced to show the presence of a mental disease or defect in the nature of insanity. The evidence of record that defendant was an alcohol abuser and may have been in an intoxicated condition is not pertinent to the legal insanity issue. See State v. Rives, 407 So.2d 1195 (La.1981); State v. Shields, 444 So.2d 287 (La.App. 1st Cir.1983), writ denied, 446 So.2d 312 (La.1984). Thus, viewing the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have concluded that defendant failed to prove by a preponderance of the evidence that he was insane at the time of the offense.
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 5
Defendant contends that he lacked the specific intent necessary for a conviction of either second degree murder or manslaughter because of his voluntary intoxication.
To be guilty of second degree murder, a defendant must have the specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1. Manslaughter consists, in pertinent part, of a homicide committed in the heat of passion. La.R.S. 14:31. It, too, requires the presence of specific intent to kill or inflict great bodily harm. See State v. Rayford, 476 So.2d 961 (La.App. 1st Cir.1985).
Specific intent is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La.R.S. 14:10 (1). Specific intent is a legal conclusion to be resolved ultimately by the trier of fact. Since specific criminal intent is a state of mind, it need not be proven as a fact, but it may be inferred from the circumstances present and actions of defendant. State v. Graham, 420 So.2d 1126 (La.1982).
Voluntary intoxication is a defense to a prosecution for a crime only when the condition precludes the presence of a specific criminal intent or of a special knowledge required in that particular crime. La.R.S. 14:15(2). "When defenses which actually defeat an essential element of an offense, such as intoxication, are raised by the evidence, the state must overcome the defense by evidence which proves beyond a reasonable doubt that the mental element was present despite the alleged intoxication." State v. Guidry, 476 So.2d 500, 503 (La. App. 1st Cir.1985), writ denied, 480 So.2d 739 (La.1986) (citation omitted).
Deputy Sheriff Darwin Givens arrested defendant shortly after the homicide occurred. He testified that he observed defendant driving his car, which was not weaving. When defendant got out of the car, he had no apparent difficulty walking, talking or standing. Defendant was able to fill out the rights form at the jail.
Detective Johnny Jones also advised defendant of his rights at the jail. Although he did smell alcohol on defendant's breath, defendant seemed alert and coherent. Detective Jones stated that defendant possibly appeared intoxicated. Eleven full beer cans were found in defendant's car after his arrest.
Louisiana State Trooper Lawrence McCleary also observed defendant at the Sheriff's Office after his arrest. Trooper McCleary testified that he smelled alcohol on defendant's breath but defendant was not disoriented and had no difficulty walking, talking or standing.
Doctor Ralph Maxwell testified at trial that defendant stated that he drank two cases of beer the night of the homicide. Defendant told Dr. Maxwell that he and his wife had two arguments that night while he was drinking his beer. According to defendant, he blacked out at 1:00 a.m., fell across his bed, and the next thing he knew was that he was arrested. He did not *505 remember the ride to the jail. He remembered nothing about the alleged incident, except the shot. Doctor Maxwell testified that, when an alcoholic is consuming alcohol, it is possible that he could appear to be functioning normally, both before and after an alleged offense, and yet have a black-out during that period, in which he would not remember anything that occurred.
Dr. Richard Strobach, who also examined defendant, testified that defendant was so intoxicated at the time of the offense that he could not have had the mental ability to formulate the intent to kill. Dr. Strobach based this conclusion primarily on a statement made by defendant that the last thing he remembered was passing out at 1:00 a.m. after drinking two cases of beer.
Carrie Mae Robinson testified that defendant called her at approximately 12:30 a.m. on the night of the killing and told her he was going to blow his wife's head off. According to statements made by defendant to the sanity commission members, he passed out at 1:00 a.m. At approximately 3:00 a.m., the Sheriff's Office received a call from the Hilburn residence regarding the shooting. Thus, almost two hours elapsed during which defendant admittedly was not drinking.
In this case, the jury found defendant's level of intoxication was insufficient to preclude his specific intent. The verdict demonstrates that the jury obviously accepted the testimony of Ms. Robinson, who spoke to defendant shortly before the incident, and of the officers who observed defendant's actions shortly after the homicide. The jury apparently rejected defendant's self-serving statements made to the members of the sanity commission approximately six months after the offense. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Kennedy, 494 So.2d 550 (La.App. 1st Cir.), writ denied, 495 So.2d 290 (La.1986). Viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could reasonably have found beyond a reasonable doubt that defendant specifically intended to kill or do great bodily harm to his wife.
This assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 6
By this assignment of error, defendant argues that alleged references by the state in closing argument to "unrebutted" evidence amounted to comments on the failure of defendant to take the stand. Defendant contends that, because he was the only person who could dispute the state's case, the prosecutor made references to his failure to testify.
Upon a motion by defendant, a mistrial shall be ordered when the state refers to a defendant's failure to testify in his own behalf. La.C.Cr.P. art. 770(3). Here, defense counsel failed to make an objection or move for a mistrial either during or after the state's closing argument. The motion for mistrial is a necessity. The "[a]bsence of a timely motion for mistrial constitutes a waiver of the alleged error." State v. Craddock, 435 So.2d 1110, 1123 (La.App. 1st Cir.1983).
Furthermore, if the merits of defendant's contention are examined, the argument is without merit. The Louisiana Supreme Court has frequently upheld references made in closing argument that the state's case stands uncontroverted. See, e.g. State v. Latin, 412 So.2d 1357 (La. 1982); State v. Sims, 346 So.2d 664 (La. 1977). In order to mandate a mistrial under La.C.Cr.P. art. 770(3), the alleged reference must be intended to draw the attention of the jury to defendant's failure to testify in his own behalf. State v. Smith 433 So.2d 688 (La.1983). "Where the defendant himself is not the only witness who might take the stand to refute the state's case, argument to the jury that the state's presentation of the facts is uncontroverted does not focus the jury's attention on the defendant's failure to testify." Id. at 697.
Here, much of the testimony the prosecutor referred to as unrebutted could not have been rebutted by anyone, as it dealt with personal observations. The other remarks merely referred to defense *506 counsel's failure to offer evidence to rebut certain state's evidence. Furthermore, it cannot be inferred that the prosecutor intended to emphasize defendant's failure to take the stand.
Assignment of error number six is without merit.

ASSIGNMENT OF ERROR NO. 7
Defendant contends that the trial court erred in not granting his motion for a post verdict judgment of acquittal. He argues that the verdict is contrary to the law and evidence.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, which was adopted by the Legislature in enacting La.C.Cr.P. Art. 821 pertaining to post-verdict motions for acquittal based on insufficiency of evidence, is that the appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.
State v. Captville, 448 So.2d 676, 678 (La. 1984).
When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." This statutory test is not a purely separate one from the Jackson constitutional sufficiency standard. "Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden." State v. Rosiere, 488 So.2d 965, 968 (La.1986).
The verdict of guilty of manslaughter in this case demonstrates that the jury concluded that it was defendant who killed Annie Ruth Hilburn. After a careful review of the evidence presented, we conclude that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have reached the same conclusion. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. State v. Kennedy, 494 So.2d at 552. It is not our function to assess credibility or reweigh the evidence. State v. Rosiere, 488 So.2d at 968.
We are convinced that, when the evidence is viewed in a light most favorable to the state, a rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of the responsive offense of manslaughter of his wife, Annie Ruth Hilburn. Thus, the evidence is both constitutionally and statutorily sufficient to support defendant's conviction. The trial court did not err in denying defendant's motion for a post verdict judgment of acquittal.
For the above reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 8
In his final assignment of error, defendant argues his sentence is excessive. He claims that the sentence was influenced by false and prejudicial information contained in the pre-sentence investigation report.
Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it is so disproportionate as to shock one's sense of justice. State v. Reed, 409 *507 So.2d 266 (La.1982). A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Lanclos, 419 So.2d 475 (La.1982).
"The Code of Criminal Procedure sets forth the items which must be considered by the trial judge before passing sentence. The trial judge need not recite the entire checklist of article 894.1, but the record must reflect that the judge adequately considered the guidelines." State v. Davis, 448 So.2d 645, 653 (La.1984) (citations omitted). When a trial court recites some of the article 894.1 factors, such as defendant's lengthy criminal record or the risk that defendant would commit other crimes, a factual basis for the sentence is present; and it is not necessary for the trial court to enumerate each factor under the article. State v. Burns, 441 So.2d 1294 (La.App. 1st Cir.1983), writ denied, 444 So.2d 1242 (La.1984).
Defendant was found guilty of manslaughter, in violation of La.R.S. 14:31, which carries a penalty of imprisonment at hard labor for not more than twenty-one years. Herein, defendant received a prison term of fourteen years at hard labor.
We find that the trial court adequately satisfied the statutory criteria set forth in La.C.Cr.P. art. 894.1. Before imposing sentence, the trial court conducted a hearing to consider defendant's motion to traverse the pre-sentence investigation report. The court heard testimony from numerous witnesses for the defense, as well as the state. In imposing sentence, the court stated that it took into consideration the pre-sentence investigation report and the testimony offered to traverse that report. The trial court noted that taking someone's life is an extremely serious offense. The court opined that any lesser sentence would be a complete derogation of the court's duty and would deprecate the seriousness of the crime. The court specifically considered the mitigating fact that, since trial, defendant had somewhat rehabilitated himself.
Defendant was given more than an ample opportunity to traverse those portions of the pre-sentence investigation report which he believed to be false and prejudicial. The trial court heard the testimony of seven defense witnesses called to traverse the report. The court specifically stated that it considered the testimony offered at the hearing in imposing sentence.
We note that the pre-sentence investigation report recommended defendant be sentenced to a lengthy period of incarceration. Under the circumstances of this case, we find no abuse of the trial court's sentencing discretion. Hence, we do not find defendant's sentence to be excessive.
This assignment of error is without merit.
The defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] At the end of defendant's brief, defense counsel includes "Comments on failure of defense attorney to ask for mistrial on assignment of errors number 1, 2, 3 and 6". Therein, it is urged that the incompetency of defense counsel is patent on the face of the record and the issue of incompetency should be addressed on appeal.

This allegation was not assigned as error and does not constitute error patent on the face of the record. Accordingly, it is not properly before this Court for review. See La.Code Cr.P. Arts. 844, 920; State v. Burge, 498 So.2d 196 (La.App. 1st Cir.1986). Moreover, the issue of the incompetence of defense counsel is more properly reviewable by application for post-conviction relief than on appeal. See La. Code Cr.P. Art. 924; State v. Barber, 444 So.2d 294 (La.App. 1st Cir.1983).
[2] Deputy Givens is mistakenly referred to in the transcript as Deputy Gibbens.