527 So.2d 1140 (1988)
STATE of Louisiana
v.
Joseph Clinard HARRIS.
No. 87 KA 1701.
Court of Appeal of Louisiana, First Circuit.
June 21, 1988.
*1141 Bryan Bush, Dist. Atty. by Thomas Walsh, Asst. Dist. Atty., Baton Rouge, for plaintiff/appellee.
Office of the Public Defender, Baton Rouge, for defendant/appellant.
Before WATKINS, CARTER and FOIL, JJ.
WATKINS, Judge.
Defendant, Joseph Clinard Harris, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1. Defendant entered the dual plea of not guilty and not guilty by reason of insanity.[1] After trial by jury, he was found guilty as charged. Defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant's sole assignment of error alleges the evidence was insufficient to convict him of second degree murder. Defendant contends that he was unable to form the requisite specific intent due to his intoxication and that, therefore, the evidence only supports a manslaughter conviction.[2]

*1142 FACTS
On the evening of August 26, 1986, defendant approached three people, two apparent females ("women")[3] and one male, who were soliciting on Quida Mae Street near Airline Highway. Defendant gave the male twenty dollars and walked with one of the "women" into a nearby apartment building under construction.
The "woman" began performing the act of fellatio upon defendant. The "woman" ceased performing the act when it became apparent defendant was preparing to climax (reach orgasm). The "woman" demanded an additional twenty dollars from defendant in order to complete the act. Defendant picked up a large, loose piece of concrete and begand striking the "woman" on the head.
After inflicting multiple blows upon the victim's head, defendant strangled the victim with a knotted vinyl belt. The record indicates the victim was fighting for his life when being strangled. The cause of death was determined to be asphyxiation. Defendant dragged the victim's body for an approximate distance of twenty feet, through loose gravel and into an empty apartment. Defendant then fled the scene and, at approximately 1:45 a.m., phoned Hershel Allor.
Defendant asked Allor to pick him up at the Bi-N-Pak Grocery, near Earl K. Long Hospital. After Allor arrived at the Bi-N-Pak he called out defendant's name. Defendant walked out from behind the grocery building and entered Allor's vehicle.
Defendant's gray T-shirt was blood-stained and torn. He had two long scratch marks down his arms. When questioned by Allor as to his physical appearance, defendant explained his belief that he had killed a transvestite prostitute.
The victim's body was found the following morning lying in a pool of blood. The victim was clothed, but the trouser zipper had been zipped down.
Fearing his own and his family's safety, Allor repeatedly telephoned Crime Stoppers and anonymously reported the crime for a one-month period. It wasn't until the defendant began following Allor that he reported the crime to the district attorney's office.
Thereafter, sometime in mid-October, 1986, Allor reluctantly agreed to be outfitted with a wire transmitter and a microphone in order to provide the police with sufficient information to arrest defendant. Allor went to defendant's apartment, and he and defendant discussed the murder at length.
Defendant related that he dragged the victim for fifteen feet, that the victim weighed 130 pounds and was "a real skinny one, that he looked like a man because, because of the Adams' Apple and the pointed nose and chin." Defendant told Allor that "she was going 20/20 on him. In other words, charged him twenty and when he was about to ejaculate, charged him twenty more. And he said he had to go as high as fifty with some of `em and he just wasn't going to put up with it again."
An arrest warrant issued for defendant's arrest. Defendant was apprehended and subsequently interrogated. Detective Robert Howle testified that defendant, in response to a question asking him why he had done it, responded, "I f___ing lost my mind." Defendant was subsequently indicted by a grand jury.
In his sole assignment of error, defendant claims that his intoxicated condition precluded his ability to form the specific intent to kill or inflict great bodily harm. Defendant does not deny that he caused the victim's death; instead, he contends he committed the crime on the spur of the moment, in a drunken rage. Therefore, defendant's sanity is not an issue before this Court.
At the outset, we note that the proper procedural vehicle for raising the issue of the sufficiency of the evidence is by a *1143 motion for a post verdict judgment of acquittal. LSA-C.Cr.P. art. 821; State v. Britt, 510 So.2d 670 (La.App. 1st Cir.1987). Despite defendant's failure to proceed properly, a reviewing court must consider the issue when briefed pursuant to an assigned error and determine whether or not the evidence meets the constitutional standard enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. LSA-C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984).
To be guilty of second degree murder, a defendant must have the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. Manslaughter consists, in pertinent part, of a homicide committed in the heat of passion. LSA-R.S. 14:31. It, too, requires the presence of specific intent to kill or inflict great bodily harm. See State v. Hilburn, 512 So.2d 497 (La.App. 1st Cir.), writ denied, 515 So.2d 444 (La.1987).
Specific intent is defined as the "state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent is a legal conclusion to be resolved ultimately by the trier of fact. Since specific criminal intent is a state of mind, it need not be proven as a fact; but it may be inferred from the circumstances present and the acts of defendant. State v. Graham, 420 So.2d 1126 (La.1982); State v. Kennedy, 494 So.2d 550 (La.App. 1st Cir.), writ denied, 495 So.2d 290 (La.1986).
Voluntary intoxication is a defense to a prosecution for a crime only when the condition precludes the presence of a specific criminal intent or of a special knowledge required in that particular crime. LSA-R.S. 14:15(2).[4] When defenses which actually defeat an essential element of an offense, such as intoxication, are raised by the evidence, the state must overcome the defense by evidence which proves beyond a reasonable doubt that the mental element was present despite the alleged intoxication. State v. Hilburn, supra. See also State v. Cheatwood, 458 So.2d 907, 910 n. 4 (La.1984).
The circumstances do not indicate that defendant's intoxication precluded the presence of the specific criminal intent required for second degree murder. Although defendant told Allor and Detective Howle that he had lost his mind, the record reflects that defendant, while appearing very intoxicated, was able to walk and give Allor specific directions as to his location after the crime.
The record reflects that defendant had a real hatred for women and that he wanted to kill a woman. This hatred was purportedly caused by defendant's resentfulness toward his mother. The evidence at trial revealed defendant's desire to go "creeping" (looking for an opportunity to possibly harm or kill prostitutes in the Airline Highway vicinity). The activity referred to by defendant as "creeping" manifests a sadistic desire to inflict pain or to kill prostitutes. Defendant related his sadistic fantasy to Allor on many different occasions prior to the instant crime and at least twice thereafter. The facts of record give rise to the reasonable inference that defendant went "creeping" on the evening of August 26, 1986. The fact that the victim was a transvestite and not truly female was insufficient to deter defendant.
Moreover, defendant's actions indicate that he knew exactly what he was *1144 doing. After killing the victim, defendant dragged the body fifteen feet through gravel in an attempt to hide the body at another location. Defendant fled the crime scene and telephoned Allor, giving Allor specific directions to pick him up and give him a ride home. These are not the actions of a mindless drunk. Rather they are deliberate acts, indicating a clear mind. Additionally, flight or attempt to avoid apprehension indicates a guilty mind. State v. Fuller, 418 So.2d 591 (La.1982). We find particularly persuasive the evidence that the defendant brutally and repeatedly beat the victim and then strangled him to death. The repetition of the defendant's violent acts is sufficient to infer that he had the specific intent to inflict great bodily harm. State v. Daigle, 440 So.2d 230 (La.App. 3d Cir.1983), writ denied, 444 So.2d 123 (La. 1984). Had the defendant merely hit the victim once and killed the victim, one could reasonably argue that it was the result of heated blood. However, the repeated beating to the victim's head followed by strangulation can only suggest an active desire, or specific intent, to inflict great bodily harm.
The jury, aware of the possibility that they could return a responsive verdict of manslaughter, concluded that this was a case of second degree murder. We have carefully reviewed the record and find that the evidence supports the jury's determination. We are convinced that, when the evidence is viewed in the light most favorable to the prosecution, a rational trier of fact could reasonably have concluded beyond a reasonable doubt that defendant specifically intended to kill or do great bodily harm to Carl J. Franklin.
This assignment of error is without merit.
For the foregoing reasons, the defendant's second degree murder conviction is affirmed.
AFFIRMED.
NOTES
[1] After the defendant's indictment, the defense filed a motion to appoint a sanity commission to determine defendant's capacity to proceed and his capacity at the time of the offense. The sanity commission reported that 1) defendant denied knowledge of the offense, 2) defendant was sane at the time of the offense, and 3) defendant was capable of assisting counsel and proceeding to trial. The trial judge determined that defendant was capable of proceeding to trial.
[2] Defendant does not request an acquittal, nor does he contend that the jury erroneously failed to find that he had carried his burden of proving that he was legally insane. Rather defendant requests that the grade of homicide be reduced from second degree murder to manslaughter. We note that manslaughter also requires the presence of specific intent to kill or inflict great bodily harm. State v. Hilburn, 512 So.2d 497 (La.App. 1st Cir.), writ denied, 515 So.2d 444 (La.1987). Despite this fallacy in defendant's argument, we shall proceed to examine the sufficiency of the evidence for a second degree murder conviction.
[3] The defendant later discovered that one of the apparent females was in fact a male impersonating a female.
[4] The defendant asserts that his intoxicated condition warrants a reduction of his crime from second degree murder to manslaughter. A mental defect, such as intoxication, which falls short of legal insanity is not sufficient to reduce the grade of the crime. See State v. Jones, 359 So.2d 95 (La.1978), cert. denied, 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708 (1978); State v. Martin, 491 So.2d 458 (La.App. 1st Cir.1986); State v. Burton, 464 So.2d 421 (La.App. 1st Cir.), writ denied, 468 So.2d 570 (La.1985). The record does not support defendant's claim that the verdict of second degree murder must be reduced to manslaughter.