572 So.2d 242 (1990)
STATE of Louisiana
v.
John F. HOSFORD.
No. KA 89 2088.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Writ Denied March 1, 1991.
*243 Bryan Bush, Dist. Atty. by Charles Grey, Asst. Dist. Atty., Baton Rouge, for plaintiff/ appellee.
Eugene Booth, Baton Rouge, for defendant/appellant.
Before COVINGTON, C.J., and LANIER and VIAL LEMMON,[*] JJ.
COVINGTON, Chief Judge.
The defendant, John Farrell Hosford, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. He received the mandatory sentence of life *244 imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging six assignments of error, as follows:
1. The jury verdict is contrary to the law and the evidence.
2. The trial court erred in allowing autopsy photographs of the victim to be introduced into evidence over defense objection.
3. The trial court erred in giving a jury instruction on flight.
4. The trial court erred in denying the defendant's motion for a new trial.
5. The trial court erred in denying the defendant's motion for "post-verdict judgment of acquittal or, in the alternative, a finding of a lesser offense."
6. Due to error patent on the face of the record, the conviction and sentence must be reversed.

FACTS
During the early evening hours of December 16, 1988, the victim, Yvonne Elaine Hosford, was murdered in her north Baton Rouge home, located on St. Lawrence Drive. At the time, her husband, the defendant, was in the Navy and was home on leave. That evening, the defendant was going to take their four children to a bonfire and barbecue at his mother's house in Tickfaw. The victim was not going with them. The children arrived home from school between 2:30 and 3:30 that afternoon. At approximately 4:00 p.m., the children got into the Hosford's van and the victim told them goodbye. She went back inside the house and became engaged in a conversation with the defendant. This conversation evolved into an argument. Two of the children, Wayne and Brad, became hungry and went into the kitchen to fix some sandwiches. While inside, Wayne heard the defendant and the victim talking about a divorce. Shortly thereafter, Wayne and his sister Michelle heard a sound from inside the house which sounded like someone being hit with a belt, followed by the victim saying twice, "Stop Farrell!" When Wayne, Brad and Michelle went inside, they saw the defendant on his knees wiping up blood with his T-shirt. The defendant explained that he had knocked out a tooth and told the children to go back to the van, which they did.
A few minutes later, the defendant came outside, opened the rear of his van, retrieved a tool box, placed a file in his pocket, and returned to the house. When Michelle tried to go back inside the house, she found the door locked. At this point, Wayne and Michelle heard the victim say, "I never loved you and I never will" and "God help me!" Subsequently, Hosford called Wayne into the house and told him not to look at his mother's face. He stated that she had tripped and hurt herself. When the defendant turned on the lights, Wayne observed the victim lying on top of the dining room table. Her body was covered in a tablecloth. The defendant instructed Wayne to grab her feet and together they carried her to the van, whereupon the defendant tried to stuff the victim underneath the rear seat. The defendant also tried to close the rear doors to the van while the victim's arms dangled outside. The defendant then threw the victim onto the rear seat and drove away. He tried to get the children to take some sleeping pills, but they refused.
Near the intersection of Hooper and Joor Roads, Wayne flagged down Deputy Sheriff William Sutton. Deputy Sutton activated his emergency lights and motioned for the defendant to pull over. The defendant informed Deputy Sutton that the victim had been hurt and that he needed to get her to a hospital. Deputy Sutton immediately escorted the defendant to Earl K. Long Hospital. At the hospital, the victim was pronounced dead on arrival. Shortly thereafter, the defendant was arrested.
When investigators arrived at the crime scene, they discovered evidence that someone had attempted to clean up a large amount of blood. They found blood-soaked clothes and towels, plastic bags containing items soaked with blood and water, a bloodstained mop in the bathroom lavatory, and a plastic bucket in the bathtub. Although the defendant's Buck knife scabbard *245 was found on a kitchen countertop, the knife itself was never recovered.
At the trial, the defendant explained that an unknown intruder broke into the house and attacked the victim. He testified that he heard something fall, went to investigate, and saw someone struggling with the victim. According to the defendant, the inside of the house was dark and he saw only an outline of the attacker. The defendant claims that he fought with the unknown intruder and forced him to flee out the back door. The defendant testified that he was unable to carry the victim to the van and called Wayne to help him do so. He also explained that he was trying to drive to the hospital but he got lost.
Both the defendant and his sister testified that the defendant had scratches on his face and arms resulting from the defendant's cutting firewood and wood for the bonfire. However, both Wayne and Michelle testified that they did not observe such scratches on the defendant when they arrived home from school that afternoon. They also testified that they did not hear any dogs barking when the victim was stabbed, although their three dogs and the neighbors' dogs always barked at strangers.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, the defendant contends that the trial court erred in allowing autopsy photographs of the victim to be admitted into evidence over his objection. At a pretrial hearing, the trial court reviewed ten autopsy photographs of the victim, rejected one, and concluded that the remaining nine photographs would be admissible into evidence at the trial. The defendant objected to this ruling. At the trial, these photographs were introduced into evidence as State Exhibit 48 A-I.
Post-mortem photographs of murder victims are admissible to prove corpus delicti, to corroborate other evidence establishing the cause of death, and to provide positive identification of the victim. The admission of allegedly gruesome photographs will not be overturned unless it is clear that the prejudicial effect of the photographs outweighs their probative value. State v. Moten, 510 So.2d 55, 59 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
We have reviewed these photographs and find that they are indeed unpleasant. Nevertheless, because these photographs depicted numerous cuts, scratches, and bruises on various parts of the victim's body, their probative value outweighs any prejudicial effect. These photographs were probative of certain facts necessary to the verdict which was rendered. Because a manslaughter conviction was a possible responsive verdict, the extent and number of wounds tended to negate a killing in the heat of passion, and helped prove the brutal and determined nature of the homicide.
The photographs were not repetitive. The wounds were so extensive and numerous that it would be impossible to show them all in one photograph. The court did exclude some photographic evidence at a pretrial hearing, guarding against the dangers of needlessly inflaming the jury with photographs of this nature. While this type of evidence is often disgusting, it may be necessary in proving every element of the offense charged beyond a reasonable doubt. While we must be vigilent in not allowing evidence to be admitted that will unfairly prejudice the defendant, we must recognize the reality that proof of a heinous crime may require the admission of evidence that will be unsettling to any normally constituted human being. The contention that these photographs unfairly prejudiced the defendant also rings hollow when we remember that it was not the state who caused the victim to be left in such a condition. See State v. Hartman, 388 So.2d 688, 692 (La.1980).
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THREE:
In this assignment of error, the defendant contends that the court erred in instructing the jury on flight. The trial court's charge to the jury contained the following instruction:

*246 If you find the defendant fled immediately after a crime was committed or after he was accused of a crime, flight alone is not sufficient to prove that he is guilty. However, flight may be considered in light of all of the other evidence. You must decide whether such flight was due to consciousness of guilt or to other reasons unrelated to guilt.
While an individual's flight does not in and of itself indicate any guilt, it can be considered as circumstantial evidence that one has committed an offense and it is admissible into evidence as being relevant to show consciousness of guilt. State v. Harris, 527 So.2d 1140, 1144 (La.App. 1st Cir.1988), and State v. Williams, 500 So.2d 811, 816-817 (La.App. 1st Cir.1986). Especially in light of the defendant's claim that an intruder attacked his wife, evidence that the defendant placed the victim's body in his van and drove away from the nearest hospital was a relevant factor for the jurors to consider in their assessment of his credibility. Therefore, the issue of flight was before the jury; and the trial court did not err by including a jury instruction on flight. See State v. Pravata, 522 So.2d 606, 612-613 (La.App. 1st Cir.), writ denied, 531 So.2d 261 (La.1988).
Defendant contends that the instant jury instruction on flight violated La.C. Cr.P. articles 772 and 806. We disagree. In the instant case, the court correctly instructed the jury on flight without recapitulating the evidence, repeating the testimony of any witness, or offering any opinion as to what facts, if any, had been proven. Accordingly, the court's instruction on flight did not constitute a comment on the evidence in violation of La.C.Cr.P. arts. 772 and 806. See State v. White, 329 So.2d 738, 741-742 (La.1976).
This assignment of error is meritless.

ASSIGNMENTS OF ERROR NUMBERS ONE, FOUR, AND FIVE:
In assignment of error number one, the defendant contends that the jury verdict was contrary to the law and the evidence. In assignment of error number four, the defendant contends that the trial court erred in denying this motion for new trial. In assignment of error number five, he contends that the trial court erred in denying his motion for "post-verdict judgment of acquittal or, in the alternative, a finding of a lesser offense." All of these assignments of error relate to the alleged insufficiency of the evidence to support the instant conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. Kennedy, 494 So.2d 550, 552 (La.App. 1st Cir.), writ denied, 495 So.2d 290 (La.1986).
LSA-R.S. 14:30.1 provides, in pertinent part:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
In his brief to this Court, the defendant cites State v. Shapiro, 431 So.2d 372 (La. 1982) and State v. Williams, 423 So.2d 1048 (La.1982), for the proposition that the circumstantial evidence rule (LSA-R.S. 15:438) provides a stricter standard of reviewing the sufficiency of the evidence. The defendant further contends that the circumstantial evidence in the instant case failed to exclude every reasonable hypothesis of innocence. We disagree on both points.
LSA-R.S. 15:438 is not a purely separate test from the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review. Ultimately, the Jackson standard is the objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. Thus, although LSA-R.S. 15:438 may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in *247 cases which hinge upon the evaluation of circumstantial evidence. State v. Smith, 490 So.2d 365, 368-369 (La.App. 1st Cir.), writ denied, 494 So.2d 324 (La.1986).
The trier of fact may accept or reject, in whole or in part, the testimony of any witness. Furthermore, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La.App. 1st Cir.1984). In the instant case, the unanimous jury verdict indicates that the jurors accepted the testimony of the State witnesses and rejected the testimony of the defense witnesses.
The victim did not commit suicide. Thus, the jury was presented with only two theories of the homicide: the State's theory that the defendant intentionally murdered the victim and the defendant's theory that an unknown intruder murdered the victim. When a case involves only circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. See State v. Captville, 448 So.2d 676, 679-680 (La. 1984).
Considering all of the evidence in this case, the jury's rejection of the defendant's hypothesis of innocence, i.e., that an unknown intruder attacked and murdered the victim, was reasonable. Furthermore, the jurors were aware of the possibility that they could return a responsive verdict of manslaughter. Instead, the jury unanimously concluded that this was a case of second degree murder. After a careful review of the record, we believe that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of second degree murder. Accordingly, the trial court correctly denied the defendant's motions for new trial[1] and "post-verdict judgment of acquittal or, in the alternative, a finding of a lesser offense."
For the above reasons, these assignments of error are meritless.

ASSIGNMENT OF ERROR NUMBER SIX:
In this assignment of error, the defendant contends that, because of errors patent on the face of the record, his conviction and sentence should be reversed. However, in his brief to this Court, the defendant did not cite any specific patent errors. Rather, he merely requested that this Court review the record for errors patent, which this Court would have done in any event. We have thoroughly inspected the pleadings and proceedings in the record on appeal, and our inspection has failed to reveal any errors patent on the face of the record. See La.C.Cr.P. art. 920(2); State v. Stringer, 450 So.2d 1056 (La.App. 1st Cir. 1984).
This assignment of error is meritless.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Mary Ann Vial Lemmon of the 29th J.D.C., is serving as judge pro tempore by special appointment of the Louisiana Supreme Court to fill the vacancy created by the illness and subsequent death of Judge Steve A. Alford, Jr.
[1] In addition to an allegation of insufficient evidence, the defendant's motion for new trial also alleged that the trial court erred in allowing the introduction into evidence of autopsy photographs of the victim (State Exhibit 48) and in charging the jury on flight. These arguments were previously considered in assignments of error numbers two and three and found to be meritless.