454 So.2d 871 (1984)
STATE of Louisiana
v.
John D. WHITLOCK a/k/a Fred Sebastian.
No. KA-1631.
Court of Appeal of Louisiana, Fourth Circuit.
July 31, 1984.
*872 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Susan Scott Hunt, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
John M. Lawrence, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
Before GULOTTA, BARRY and CIACCIO, JJ.
BARRY, Judge.
Defendant John Whitlock, a/k/a Fred Sebastian, appeals his second degree murder conviction, LSA-R.S. 14:30.1.
Defendant cites as error the denial of his motion to suppress, the refusal to order production of the "rap sheet" and recorded statement of the state's chief witness, admission of photographs of the victim, denial of a mistrial because of improper comments by a homicide detective, and the insufficiency of evidence to show specific intent.

FACTS
James Ward, a friend of the defendant for several years, testified he visited the defendant's apartment and they drank 2 or 3 beers, then went to a bar for another beer and to shoot pool. At a second bar they met Ronald Jinkerson, an acquaintance of defendant, and the men went to a third bar. While Jinkerson was away from their table, defendant told Ward that Jinkerson had stolen money from him the year before.
The trio, with Ward driving, went to another bar which was closed. After driving three-quarters of a block Ward heard a *873 shot and Jinkerson said: "You just killed me", then Ward saw defendant fire two shots at point blank range, hitting Jinkerson in the face and chest. Defendant said he wanted to get rid of the body, and Ward, in a state of "semi-shock", drove to a remote area where defendant dumped the body.
Ward and defendant went to defendant's apartment and drank more beer. Ward's wife arrived and the three decided to go out for dinner. When Ward's wife left to change clothes he suggested to defendant that he get rid of the gun. The two walked to the Mississippi River and threw the gun in. They rejoined Ward's wife, went to dinner, then back to defendant's apartment.
As soon as Ward was sure defendant was asleep, he left with his wife and called the police to report the homicide. Officers questioned Ward and obtained an arrest warrant for defendant. The police then entered the apartment, accompanied by Ward and found the defendant asleep. Ward had seen the defendant throw his bloodstained shirt in a trash can, so he retrieved the shirt and gave it to the police. An officer seized an empty gun holster in a dresser drawer.
A pat-down search of defendant at Central Lockup revealed three spent casings. The coroner testified the victim was shot thrice in rapid succession from close range. A police criminalist testified that blood stains on defendant's shirt, the victim's shirt, and in Ward's automobile matched the victim's blood. The police also recovered a spent bullet from the rear seat of the car.

Assignment of Error No. 1

Production of Ward's "Rap Sheet"
In his motion for discovery and inspection, defendant requested a computer print-out or "rap sheet" and FBI record of the state's chief witness, Ward. The state responded it "has no knowledge of any convictions", which the court ruled was adequate. Subsequently, at the hearing on the motion to suppress and at trial Ward admitted convictions in two other states for destruction of property and for resisting arrest.
Defendant contends that after the state became aware of Ward's record (following the suppression hearing) it should have obtained and produced a rap sheet for impeachment purposes. State v. Harvey, 358 So.2d 1224 (La.1978), after remand 369 So.2d 134 (La.1979).
In Harvey, however, the court did not require the state to procure and produce rap sheets of its witnesses; rather, it required the prosecution to state whether it had such records in its possession and, if so, to furnish them to the defendant or the court in camera. At the remand hearing the state advised the court and the defense that the state did not have any rap sheets or information on prior convictions of its witnesses. The Supreme Court noted the state did not have such information and held the state adequately replied to the discovery request.
Similarly, in State v. Washington, 407 So.2d 1138 (La.1981), the court found no error in the trial court's refusal to order the state to obtain "rap sheets" on state witnesses. The trial judge held a hearing and was satisfied the state was not in possession of such documents.
This Court recently said "the State has no affirmative duty to find and produce rap sheets." State v. Alexandra, 451 So.2d 1278 (La.App.1984).
Thus, it logically follows that the state has no affirmative duty to ascertain if its witnesses have prior convictions. Upon request the state is obligated to provide information in its possession regarding the criminal convictions of its witnesses. Here the state declared it had no record of convictions on Ward. The defendant made no contrary showing and the state's response was adequate.
This assignment has no merit.

*874 Assignment of Error No. 2

Production of Ward's Statements
Defendant contends the trial court erred by refusing to compel the state to produce any statements made by Ward. Defendant claims Ward's testimony was crucial and the state should have been required to furnish such statements for in camera review to determine if they contain inconsistencies or exculpatory information.
As the state points out, under La.C.Cr.P. Art. 723 the state has no obligation to furnish statements of its witnesses, other than the defendant or co-conspirators. Under art. 718 the state is required to furnish the defense with any documents that are "favorable to the defendant and which are material and relevant to the issue of guilt or punishment." Art. 718 further provides that "the court may determine whether evidence is subject to the provisions of Paragraph (1) hereof by in camera inspection."
The state maintains that Ward's statements are inculpatory and contain neither inconsistencies nor other evidence favorable to the defendant. However, in State v. Davenport, 399 So.2d 201, 204 (La.1981) the state took a similar position and the court said:
The state contends there are no material inconsistencies or exculpatory information in the statements in its file. Defendant has made no showing of any such inconsistencies or Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] information in the statements, but, of course, he has no knowledge of the contents thereof.
If in such a situation the district attorney is wrong (and we say this without casting any aspersions whatsoever on the prosecutors of this state, because it is usually most difficult to determine whether or not inconsistencies or omitted information in witnesses' statements are material to the defendant's guilt), certainly the interests of justice would best be served by obtaining a judicial decision in this regard during the trial rather than later through post-conviction remedies. While such procedure will interrupt the trial and will be time consuming, we believe the added burden to our busy trial judges will be outweighed by the efficiency in the administration of justice.
We therefore conclude that in this case the trial judge should have made an in camera inspection for material inconsistencies and Brady information in the requested written or recorded statements of the state witnesses prior to their cross-examination.
The court remanded the case for the trial court to determine if there were any material inconsistencies between the witnesses' prior statements and their trial testimony or if the statements contained exculpatory information.
The same conclusion was reached in State v. Ates, 418 So.2d 1326, 1328-29 (La. 1982), where the defendant requested "production of prior statements of [the chief state witness] for purposes of impeachment" and alternatively sought "an in camera inspection." In remanding for in camera inspection, the court held:
The defendant's request was specific, i.e., "prior statements of Mary Beth Deland, for purposes of impeachment." Although not phrased in as precise a manner as would be desirable, it was apparent that the request was for inconsistent and exculpatory statements. Since Ms. Deland was the chief prosecution witness and her testimony went directly to the issue of guilt of the defendant, and since the requested information was discoverable, an in camera inspection was warranted.
We, therefore, conclude that in this case, the trial judge should have made an in camera inspection for material inconsistencies and Brady information in the requested statements of Ms. Deland, for use during cross-examination.
The Ates appeal was then conditionally affirmed. See State v. Perkins, 423 So.2d 1103 (La.1982); State v. Sylvester, 388 So.2d 1155 (La.1980).
The state argues this case is distinguishable from Ates because defendant's motion *875 for production was not specific and did not state the information was sought for impeachment purposes.
In State v. Perkins, 423 So.2d 1103 (La. 1982) the defendant requested a copy of any statements of any person who had been interviewed by an agent of the state in connection with the subject matter of that case or matters related to the evidence and whom the state did or did not intend to call at trial. This was held to be a "specific request."
This defendant specifically asked for exculpatory statements of Ward, the eyewitness and chief prosecution witness. The intent, for impeachment and exculpatory use, is obvious. The motion also specifically sought in camera inspection of Ward's statements. Under these facts the defendant was at least entitled to in camera review and failure to do so was error.
Following the mandate in Ates, we remand to determine:
(1) whether the written or recorded statements of James Ward contain inconsistencies with his trial testimony, or other evidence favorable to the accused; and, if so,
(2) whether such evidence is material to the defendant's guilt or punishment, employing the standard applicable on the basis of the totality of the facts and circumstances of this case. In the event of an affirmative determination of both of these factors by the trial court, a new trial will be required. However, upon a contrary finding, the conviction will be affirmed. For purposes of future appeals the statements should be sealed and made a part of the record.

Assignment of Error No. 3

Admission of the Holster & Shirt
Defendant contends the court erred by admitting the holster and the bloodstained shirt found in defendant's apartment.
Although the police were legally in defendant's apartment pursuant to a valid arrest warrant, they had not obtained a search warrant. It does not appear that seizure of the holster was justifiable under any exception to the search warrant requirement. The holster was found in a closed dresser in a different room from the room where defendant was arrested, thus, it was neither "in plain view" nor "within the defendant's immediate area of control" and the seizure was not "incident to lawful arrest" under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and State v. Ranker, 343 So.2d 189 (La.1977). The defendant was physically restrained and his apartment was secured by the police, so there was ample opportunity to obtain a warrant. There were no "exigent circumstances" activating an "emergency exception" to the search warrant requirement. State v. Ludwig, 423 So.2d 1073 (La.1983).
The state contends that any error in admission of the holster was harmless because it was not material in establishing defendant shot the victim. In State v. Gibson, 391 So.2d 421 (La.1980), our Supreme Court adopted the federal standard in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) for determining whether the admission of illegally seized evidence was harmless error. That test is:
"whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and that "the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt,"
Our review shows no testimony or evidence linking the holster to the shooting. Defendant's conviction rests firmly on the unrefuted eyewitness testimony of Ward, the expert testimony identifying the blood on defendant's shirt and in Ward's car, and the three spent casings found on defendant. Defendant's attorney offered to stipulate defendant shot the victim and concedes in his brief that "the state did prove defendant shot and killed the victim", thus, the holster had no probative value, did not contribute to the verdict, and its admission was harmless error.
*876 Defendant also argues that admission of the bloodstained shirta damning piece of evidencewas reversible error. Again, defendant relies on the absence of a search warrant.
The shirt was taken from the kitchen garbage can by Ward, who had seen the defendant put it there several hours earlier, so this evidence cannot be considered the "fruit of an illegal search". Ward retrieved the shirt and offered it to the police. After Ward displayed the shirt it was "in plain view" and certainly appeared relevant to the crime. The record is clear that Ward was not acting at the direction or instigation of the police. Ward could have taken the shirt before leaving defendant's apartment to summon the police, but instead (probably wisely) left as soon as defendant went to bed.
The exclusionary rule has no application to private citizens not acting under police auspices. Therefore, the court properly denied defendant's motion to suppress the shirt.

Assignment of Error No. 4

Admission of Photographs
Defendant contends the trial court erred by allowing into evidence three photographs of the victim's body, alleging they were gruesome and inflammatory. He argues that he offered to stipulate what the photographs would show (i.e., the entrance and exit wounds, the cause of death, the location of the body, and even who fired the shots), and the probative value of the photographs was outweighed by their prejudicial value. The state, on the other hand, stresses the great discretion allowed the trial court in determining admissibility of such evidence.
In State v. Harvey, supra at 1229, the Court cited Wigmore On Evidence that "there should be no absolute rule on the subject; and the trial Court's discretion should determine whether a particular admission is so plenary as to render the first party's evidence wholly needless under the circumstances." Harvey notes that "a defendant may not be permitted to rob the State's evidence of its fair and legitimate weight by means of a unilateral stipulation." Id. at 1229. See also State v. Gilmore, 332 So.2d 789 (La.1976).
The admission of gruesome photographs should not be overturned unless it is clear their prejudicial effect outweighs their probative value. State v. Brogdon, 426 So.2d 158 (La.1983). Photographs which illustrate any fact, shed light upon fact or issue in the case, or are relevant to describe the person, place or thing depicted are generally admissible. State v. Kirkpatrick, 443 So.2d 546 (La.1983).
The photographs at issue support Ward's account of how the shooting took place. They also speak to the issue of intent since they illustrate the victim was shot three times at close range. We have reviewed the black and white photographs which show the body as it was found. There is no great amount of blood, the bullet holes are small and clean, and the face and body are not contorted. The photos are not gruesome or inflammatory.
This assignment has no merit.

Assignment of Error No. 5

Denial of Motion for Mistrial
Defendant contends the trial judge should have granted a mistrial because of remarks by one of the arresting officers. During direct testimony, Officer Adams, who was in training as a homicide detective, stated he received information from his supervisor that they had "a witness who had witnessed a murder." Defendant immediately objected and the trial court admonished the jury to disregard the statement. Detective Adams then testified, "We interviewed John Ward. He informed us that he had witnessed a murder..." The trial court again sustained defendant's objection and chastised the officer for his remark. Defendant argued the admonishment was insufficient and moved for a mistrial, which was denied.
*877 Defendant submits the remarks constituted "hearsay evidence on a material contested issue", i.e., whether the homicide was or was not a murder, and thereby improperly influenced the jury. We disagree with defendant's claim that Adams' remarks were those of "an experienced police officer" intended "to influence the jury as to what the police considered to be a murder". The record convinces us Adams' remarks resulted from carelessness and inexperience, were not deliberate, and reflected Ward's characterization of the homicide to the police, rather than the police's classification of the crime.
The hearsay rule is designed to eliminate testimony from an out-of-court declarant who is not subject to cross-examination and whose demeanor cannot be scrutinized by the jury. The detrimental impact of such testimony is greatly reduced when, as here, the declarant is also a witness at trial. The trial judge promptly admonished the jury to disregard Adams' remarks.
In State v. Goods, 403 So.2d 1205 (La.1981), the Court stated: "A mistrial is a drastic remedy and is warranted only when the trial error results in substantial prejudice to the defendant sufficient to deprive him of a fair trial." p. 1208.
This assignment of error has no merit.

Assignment of Error No. 6

Denial of Motion for New Trial
Defendant complains the trial court erred by denying his motion for a new trial. This contention is based primarily on the admission of the holster and the bloodstained shirt, questions disposed of in the third assignment of error. In addition, defendant argues the trial court should have granted a new trial because there was insufficient evidence to show he acted with a "specific intent to kill or inflict great bodily harm", as required by R.S. 14:30.1. Defendant concedes that "the state did prove defendant shot and killed the victim", but argues that because there was no evidence as to what transpired between defendant and the victim while Ward was out of the car, inferences other than defendant's specific intent to kill are possible.
La.R.S. 15:445 states "... though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." La.R.S. 15:438 further provides: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict it must exclude every reasonable hypothesis of innocence."
The state presented sufficient evidence for the trier of fact to conclude that the defendant had the requisite intent when he shot and killed the victim. Defendant had a prior dispute with the victim over money. After defendant fired the first shot, the victim said "You just killed me." Defendant fired two more shots at point-blank range.
Although defendant argues he was too intoxicated to have the requisite intent, the evidence shows otherwise. Ward testified defendant had been drinking but not to such an extent that he was no longer able to control his acts. Defendant had enough presence of mind to order Ward to help him dispose of the body and find a remote place. Defendant was also alert enough to dispose of his bloodstained shirt and walk to the river to dispose of his gun before going to dinner. There was ample evidence to establish that appellant was capable and had the requisite intent to kill or inflict bodily harm.
This assignment is without merit.
Although defendant has not challenged the sufficiency of the evidence to establish the other elements of second-degree murder, we have reviewed the record. State v. Raymo, 419 So.2d 858 (La.1982). We find that, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Fuller, 414 So.2d 306, 310 (La.1982).
*878 Defendant's conviction and sentence are conditionally affirmed. The case is remanded for an in camera inspection of pretrial statements as specified in assignment # 2.
CONDITIONALLY AFFIRMED: REMANDED.