572 So.2d 800 (1990)
STATE of Louisiana
v.
Alfred MITCHELL.
No. 90-KA-0260.
Court of Appeal of Louisiana, Fourth Circuit.
December 20, 1990.
Writ Denied March 8, 1991.
*801 Noel J. Darce, Denise M. Pilié, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for defendant.
Harry F. Connick, Dist. Atty., Jack Peebles, Asst. Dist. Atty., New Orleans, for plaintiff.
Before KLEES, CIACCIO and LOBRANO, JJ.
CIACCIO, Judge.
Defendant, Alfred Mitchell, was tried by a twelve person jury and found guilty of second degree murder, a violation of LSA-R.S. 14:30.1. The trial court sentenced him to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Defendant appeals his conviction. We Affirm.

Facts
On January 3, 1989, defendant and his live-in girlfriend, Shantell Thompson, went with Shantell's sister, Shenell, and Alvin Lockett to the home of Shantell's mother, Ora Lee Thompson, to help her move. On the way there, Lockett's truck caught on fire. While defendant and Lockett tried to extinguish the fire, Shantell and Shenell walked back to Shantell's apartment, packed her belongings and brought them to Ora Lee's house.
Around 2:00 p.m., defendant appeared at Ora Lee's house on Sixth Street near LaSalle Street. He and Shantell argued for some time. She informed him that she was leaving him and moving to her mother's house. Defendant accused her of seeing John Charles, a family friend, and threatened to kill Charles if he saw her with him. He also threatened to kill Marvin Solid, Shantell's brother-in-law. Shantell ended the argument by locking herself in the bathroom while Ora Lee forced defendant to leave. However, he kept returning at intervals throughout the afternoon, shouting and making threats. Shantell called the police, but when they arrived, defendant *802 left the scene. Shantell testified at trial that defendant did not appear intoxicated at the time.
Charles and Solid had agreed to help Ora Lee and her husband move from the Sixth Street home to a house on Amelia Street. Around 6:00 p.m. they arrived at Ora Lee's. They then went to a nearby grocery store where defendant grabbed Charles and threatened to kill him if he (defendant) saw him with Shantell. Solid testified that defendant did not look intoxicated and that he did not smell alcohol on defendant's breath.
At 8:30 p.m., after Charles' truck had been loaded, Charles, Solid and Ora Lee left for the new premises. The truck stopped at the intersection of Sixth and LaSalle, and defendant was standing nearby. Charles exited the truck and approached defendant. Solid testified he saw defendant pull out a knife and stab Charles in the neck. Solid testified at trial:
He [defendant] said, "Die, bitch, die." I said, "Oh, you killed him." and he say [sic], "I will kill him eleven more times if I have to." That's what he said.
Ora Lee testified that she did not actually see defendant stab Charles, but she heard the comments made by defendant and saw him run away.
Charles died shortly after being stabbed. The police found a baseball cap, a cardboard knife sheath and a pack of Salem cigarettes at the scene. Shantell identified the cap and sheath as belonging to defendant. Solid and Ora Lee went to police headquarters to give a statement; and afterwards, they returned to the Sixth Street residence.
Shortly after midnight, defendant appeared at Ora Lee's. He broke down the front door and shoved Ora Lee's husband out of the way. Defendant chased Solid who threw a bundle of clothing at defendant. Solid ran out of the house, and Ora Lee and her husband hid in a hot water heater shed. Defendant went outside and smashed the windows of Charles's truck.
The police arrived and found defendant standing in the middle of the street causing a disturbance. The officers had to subdue defendant who appeared to be intoxicated. Defendant told the officers his name and address, and he was placed under arrest. According to the arresting officers, defendant's speech was slurred, but he had no trouble walking.
Detective Jacklean Davis questioned defendant at police headquarters. She testified that she could smell alcohol on his breath, but he was able to respond when she asked him his name, address and date of birth. Detective Davis saw a cut on defendant's hand, and she brought him to Charity Hospital for treatment. The report from Charity indicated defendant was intoxicated and had an ataxic gait.
Defendant testified at trial that he was an alcoholic, and that on the morning of the murder, he drank two half-pints of peach brandy. In the afternoon, defendant said that he drank two sixteen ounce beers and that he and Ora Lee's husband shared a pint of vodka. Later in the afternoon, he drank another pint of vodka and a fifth of wine. He testified that he could not remember anything after some time around 6:45 p.m. However, defendant remembered being at the murder scene and that two people popped up from the truck and came toward him. He remembered nothing after that. Defendant denied threatening Charles and Solid earlier that day.
Peter Egan testified as an expert in substance abuse. He based his opinion on the testimony of defendant. Egan testified that it was his opinion that defendant was an alcoholic. He stated that on the day of the murder defendant was intoxicated and that a blackout can occur when an alcoholic ingests a large amount of alcohol. He testified that a person in a blackout state can appear to perform and function normally. He further stated that the diagnosis of a blackout is completely subjective in that only the person in the blackout state can ascertain it. Egan testified that depending upon the amount consumed, the time span, the person's metabolism, and history of drinking, alcohol will distort and disorganize a person's perceptions and decision-making process with a resulting loss of control. He also stated that desire becomes *803 distorted and inappropriate and that inhibitions are lowered.
On appeal, defendant raises six assignments of error.

Assignment of Error Number One
Defendant contends the state failed to prove beyond a reasonable doubt that he had the specific intent to kill John Charles. He argues that the evidence of his intoxication at the time of the offense was unrebutted; and he refers to the testimony of the substance abuse expert that none of his actions were inconsistent with a person who was intoxicated and in a blackout. Defendant argues that none of the evidence presented by the state tended to prove specific intent to kill.
The standard for review of the sufficiency of the evidence requires that after viewing the evidence in the light most favorable to the prosecution, a conviction be based on evidence sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rosiere, 488 So.2d 965 (La.1986). To be guilty of second degree murder, a defendant must have the specific intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1).
LSA-R.S. 14:15(2) provides in part:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
* * * * * *
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
When intoxication is in the nature of an affirmative defense to a criminal charge, the defendant bears the burden of proving that condition at the time of the offense. State v. Harris, 527 So.2d 1140 (La.App. 1st Cir.1988); State v. Freeman, 517 So.2d 390 (La.App. 5th Cir.1987). Although the defendant must prove the defense of intoxication, the State must overcome the defense by evidence which proves beyond a reasonable doubt that specific intent was present despite the alleged intoxication. State v. Harris, supra. The specific legal question is not when the requisite specific intent was formed, rather, it is whether, at the time of the offense, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit the offense. State v. Lentz, 306 So.2d 683 (La.1975).
Viewing all the evidence in the light most favorable to the prosecution, we find, as did the jury, the State proved beyond a reasonable doubt that defendant had the specific intent to kill John Charles. Defendant had threatened to kill Charles several times during the course of the day. He acted upon the threats despite his alleged intoxication at the time of the offense.
Defendant's argument that the evidence of his intoxication was unrebutted is unfounded. Shantell Thompson, Ora Lee Thompson and Marvin Solid all testified that they saw no evidence that defendant was intoxicated on the afternoon of January 3. This assignment of error is without merit.

Assignments of Error Numbers Two and Three
As his next two assignments of error defendant argues the trial court erred in admitting into evidence "other crimes" evidence in violation of C.E. art. 404(B), and that the trial court allowed the admission of this evidence without proper notice as required by State v. Prieur, 277 So.2d 126 (La.1973) and LSA-C.Cr.P. art. 720.
Over the objection of the defense at trial, the court allowed Marvin Solid to testify that defendant, approximately three to four hours after the murder of Charles, threatened to kill him. Solid further testified that defendant busted down the front door of the house on Amelia Street and chased *804 him out of the house in an apparent attempt to kill him. The trial court also allowed similar testimony by Ora Lee Thompson.
C.E. art. 404(B)(1) provides:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
As stated in Authors' Note (4) to this article in the Handbook on Louisiana Evidence Law, Pugh, Force, Rault & Triche (1990):
(4) The final phrase of Article 404(B)(1) was substituted for the phrase "res gestae" embraced in former R.S. 15:447-48. This provision must be interpreted and applied with great caution. See State v. Schwartz, 354 So.2d 1332 (La. 1978); Rault, An Overview of the New Louisiana Code of Evidence-Its Imperfections and Uncertainties, 49 La.L.Rev. 697, 709 (1989). Under this subparagraph, it is no longer true that "whatever forms part of the res gestae is admissible in evidence" (former R.S. 15:447) for even evidence specified in this subparagraph remains subject to the balancing test of Article 403. See Author's Note (3) to Article 403.
LSA-C.Cr.P. art. 720 provides:
Upon motion of defendant, the court shall order the district attorney to inform the defendant of the state's intent to offer evidence of the commission of any other crime admissible under the authority of Louisiana Code of Evidence Article 404. Provided, however, that such order shall not require the district attorney to inform the defendant of the state's intent to offer evidence of offenses which relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding or other crimes for which the accused was previously convicted.
The State contends defendant's attack on Solid was an "integral part" of the murder of Charles and therefore the trial judge properly admitted the testimony of Solid and Ora Lee Thompson. The defendant contends the attack was not "integral part" of the murder, and the State's failure to notify him of its intent to use this evidence made it inadmissible.
In interpreting the final phrase of the new C.E. art. 404(B)(1) it is necessary to look at cases interpreting the now repealed predecessors to that article, LSA-R.S. 15:447 and 15:448.
R.S. 15:447 provided:
Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence.
R.S. 15:448 provided:
To constitute res gestae the circumstances and declarations must be necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
In State v. Haarala, 398 So.2d 1093 (La. 1981), the defendant was separately charged for the burglary of a hardware store and the attempted burglary of a nearby drugstore. The burglary and the attempted burglary happened within a few minutes of each other. At the trial for the burglary, evidence of the attempted burglary was admitted without notice to the defendant. The Supreme Court found no error and stated:
The general prohibition against the use of other crimes evidence does not bar admission of criminal acts which are an inseparable part of the whole deed. 1 Wigmore, Evidence Sec. 218 (3d ed. *805 1940). In Louisiana, such acts are denominated as part of the res gestae and admitted under the authority of La.R.S. 15:447-48. A very close connexity between the charged offense and the other crimes evidence sought to be introduced under the res gestae exception is required. See State v. Schwartz, 354 So.2d 1332, 1334 (La.1978) and cases cited therein. This close connexity in time and location is essential to the exception because no notice of the state's intention to introduce evidence of offenses which are part of the res gestae is required. See La.C.Cr.P. art. 720; State v. Prieur, supra; Pugh, Louisiana Evidence Law 100-01 (Supp.1978) excerpting 35 La.L. Rev. 525, 526-27 (1975).
This Court has approved the admission of other crimes evidence when it is related and intertwined with the charged offense to such an extent that the state could not have accurately presented its case without reference to it. State v. Boyd, 359 So.2d 931, 942 (La.1978); State v. Clift, 339 So.2d 755, 760 (La. 1976). In such cases, the purpose served by admission of other crimes evidence is not to depict the defendant as a bad man, but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place. McCormick, Law of Evidence 448 (2d ed. 1972). The concomitant other crimes do not affect the accused's character, because they were done, if at all, as parts of a whole; therefore, the trier of fact will attribute all of the criminal conduct to the defendant or none of it. And, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. 1 Wigmore, Evidence Sec. 218 (3d ed. 1940).

Id., 398 So.2d at 1097
In State v. Argo, 476 So.2d 409 (La.App. 2d Cir.1985), the defendant and two companions stole a pickup truck, burglarized a car and pointed a shotgun at the car owner's date over a six hour period of time at the end of which defendant shot a police officer investigating the earlier offenses. The Second Circuit held that the theft of the truck, the burglary and the assault were admissible as part of the res gestae of the shooting of the police officer. Each crime occurred as the result of a previous crime, and thus they constituted one continuous transaction.
In the present case defendant threatened to kill Solid on the afternoon of January 3rd, while also threatening to kill Charles. Defendant's acts were directed against all persons assisting Shantell that evening. These included the killing of Charles, the assault on Solid, the assault on Ora Lee Thompson and her husband and the criminal damage done to Charles' truck. The incidents were close in both time and place. The State could not have accurately presented its case without the testimony regarding defendant's attack on Solid. These assignments are without merit.

Assignment of Error Number Four
In his fourth assignment of error, defendant complains the trial court erred in limiting the testimony of Peter Egan, a substance abuse expert. He argues he should have been allowed to ask Egan whether, hypothetically, the amount of alcohol consumed by defendant would impair a person's volition. Defendant contends the question did not seek an opinion as to his guilt or innocence; but instead the question sought to show that alcoholism and intoxication could result in loss of intent and in blackout.
During redirect examination by defense counsel, the following transpired:
Q Do you have any opinion about how much alcohol would be required to get a person who is an alcoholic into the state in which his volition is impaired? Such that he does not want the consequences of his actions or actually takes actions he does not intend to do?
A That varies from person to person. For some people it can be a very small amount of alcohol, and some people can tolerate much larger amounts.
Q In your opinion, would the consumption of two 16-ounce beers, two one-half pints of Brandy, a couple of shots of Vodka, a bottle of Thunderbird, and *806 another fifth or so of alcohol put a person in that state?
By Mr. Hammond:
Objection, Your Honor. This is bordering on giving an opinion as to the ultimate issue.
By Ms. Pilié:
It's a hypothetical much like the hypothetical that Mr. Hammond posed to Mr. Egan.
By the Court:
I think you are too close to the ultimate issue.
The objection is sustained.
By Ms. Pilié:
I would like it noted for the record, please, sir. Thank you.
In State v. Montana, 421 So.2d 895 (La.1982), the Supreme Court held the trial court erred in allowing the expert witness to give an opinion in response to a hypothetical question based on a factual situation similar to that which prevailed in the case. The court stated that such an opinion usurped the function of jury. See also State v. White, 450 So.2d 648 (La.1984). Moreover, an expert cannot give his opinion on the ultimate issue of the defendant's guilt in a hypothetical question paralleling the actual fact situation before the court. State v. Valentine, 496 So.2d 378, 381 (La. App. 4th Cir.1986).
The question posed to Egan by defendant was based on a factual situation directly paralleling the actual fact situation presented in court through defendant's testimony. Defendant sought to elicit an opinion as to the ultimate issue of whether defendant had the specific intent to kill, which was a question solely within the province of the jury to determine. We find the trial court did not err in sustaining the State's objection to this question. This assignment lacks merit.

Assignment of Error Number Five
In his fifth assignment of error, defendant argues the trial court gave the jury an erroneous instruction on specific intent. The trial judge's jury instruction reads in pertinent part as follows:
As to second degree murder the law indicates no definite time within which a specific intent to kill or to inflict great bodily harm must be formed so as to make the killing murder. The specific intent may have existed a moment antecedent to the act itself which caused the death or a day or any other period of time.
Defendant contends this instruction is misleading particularly since he raised intoxication as a defense.
The record reflects that defendant did not specifically object to this jury charge, but rather objected to the trial court's not giving his requested charges on criminal intent. The trial court stated that those charges were given in the general charge. The two charges on intent submitted by defendant did not deal with the time when specific intent must exist.
LSA-C.Cr.P. art. 841 requires that a defendant make known the grounds for his objection. The defendant must do this so that the trial judge has the opportunity to make the proper ruling and prevent or cure the error. Defendant must point out the specific error and is limited on appeal to the grounds for the objection articulated at trial. State v. Jackson, 450 So.2d 621 (La.1984). As defendant failed to raise a specific objection to the jury charge given by the trial judge during the trial, we find defendant effectively waived any objection to the charge and cannot now raise one on appeal.
This assignment has no merit.

Assignment of Error Number Six
In his sixth and final assignment of error, defendant complains the trial court erred in refusing to order the State to produce the criminal records of its witnesses after he formally requested the records. He argues the State should have sought and obtained these records because the credibility of the State's witnesses was a critical issue.
At the time of the crime and defendant's conviction in this case, the law specifically stated the State was under no obligation to produce rap sheets not in its *807 possession. State v. Washington, 407 So.2d 1138 (La.1981) and State v. Whitlock, 454 So.2d 871 (La.App. 4th Cir.1984). The day after defendant's conviction in this case, November 10, 1989, the Louisiana Supreme Court decreed that when requested, the District Attorney must search his computer system for criminal records of witnesses the state intends to call at trial. State v. Laird, 551 So.2d 1310 (La.1989). The law remains unclear as to whether a defendant is entitled to the criminal records of all the State's witnesses or only the records of those witnesses who are co-defendants or co-conspirators. In this case, we decline to give the holding in State v. Laird, Id., retroactive effect.
The record reflects the trial judge refused to order the State to produce the records because they were not in the State's possession. Even if the trial judge acted erroneously, considering the overwhelming evidence in the record of defendant's guilt the error was harmless. Defendant's last assignment is wit hout merit.
For the above stated reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.