701 So.2d 752 (1997)
STATE of Louisiana
v.
Charles W. HOLMES.
No. 95-KA-2249.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1997.
*753 Harry F. Connick, District Attorney, Susan Erlanger Talbot, Assistant District Attorney, New Orleans, for Plaintiff-Appellee.
Archie B. Creech, Orleans Indigent Defender Program, New Orleans, for Defendant-Appellant.
*754 Before BYRNES, JONES and WALTZER, JJ.
BYRNES, Judge.
A twelve member jury found the defendant, Charles W. Holmes, guilty of second degree murder (La. R.S. 14:30.1) of his brother, Jerry Holmes, and attempted first degree murder (La. R.S. 14:27(30)) of officer Otello Thomas.
He was sentenced on the second degree murder conviction to life imprisonment in the Department of Corrections without benefit of parole, probation, or suspension of sentence, and on the attempted first degree murder conviction to fifty years in the Department of Corrections at hard labor without benefit of parole, probation, or suspension of sentence.

STATEMENT OF THE FACTS:
Ida Mae Mitchell was with the victim, Jerry Holmes, on July 15, 1994, at 2408 Dumaine Street when Charles Holmes, Jerry's brother, walked up. Ms. Mitchell said that the brothers spoke to each other, and then Charles Holmes walked to the nearby store. He was gone for about twenty minutes. When he returned, Charles Holmes began arguing with Jerry Holmes, asking Jerry "why he didn't come to see his daddy." Ms. Mitchell said that Charles Holmes pulled out a gun and shot it once over Jerry Holmes' head. Jerry walked away; Charles Holmes followed, stood behind Jerry, and shot him in the back of the head. Ms. Mitchell said that although she witnessed the murder, she did not know "the motive behind it." Charles Holmes left the area immediately.
Kenneth Bazil, Jr., a retired employee of the Bureau of Alcohol, Tobacco, and Firearms and a reserve deputy in Orleans Parish, was part of a group of men who met informally in the 2400 block of Dumaine Street; Mr. Bazil gave a slightly different version of events. He said that on July 15, 1994, Charles Holmes walked up to Jerry Holmes and told Jerry that he should have gone to see their father when he had a heart attack. Then Charles pulled a gun out and shot "towards Jerry Holmes' abdomen," but Kenneth Bazil assumed it was a cap gun because Jerry Holmes was not wounded. Nevertheless, Kenneth Bazil pulled out his gun and stood behind a column. After noticing Bazil's reaction, Jerry said, "Ken, he's crazy. Don't bother him. He's all right. Just leave him alone." Mr. Bazil put his gun away but sat down so that he could see Charles Holmes. Bazil said the murder occurred very fast; he watched as Charles Holmes walked up to within two feet behind Jerry and shot Jerry in the back of the head. Mr. Bazil, who is a paramedic, said that Jerry Holmes was stunned for a moment and then collapsed. Bazil pulled his gun and ordered Charles Holmes to stop, but Holmes raised his hands in the airone hand still holding the gunand walked to his truck. When he was in the truck, Charles pointed his gun at Kenneth Bazil; Bazil then fired two shots at Charles Holmes.
Dr. Richard Tracy, an expert in forensic pathology who performed the victim's autopsy, found that Jerry Holmes died as a result of one gunshot wound in the back of the head. Dr. Tracy retrieved the bullet from the victim's forehead.
Officer Othello Thomas was patrolling about 7:00 p.m. on July 15, 1994, around Orleans and Tonti Streets when he noticed a man urinating on the corner. The officer ordered the man to stop and to put his hands on the patrol car. As the officer tried to pat down his left rear pocket, the man walked away, and the officer ordered him to return. The offender returned, but when Officer Thomas tried to pat down the left rear pocket, the man again walked away, and the officer ordered him back. After the entire episode happened a third time, the officer radioed for a backup. At that time, the man, later identified as Charles Holmes, said, "I ain't going to jail. Shoot me..... Kill me." And, as Officer Thomas puzzled over why the man thought he was going to jail for urinating in public, Holmes pulled a gun from his left rear pocket, pointed it at the officer and pulled the trigger. The gun misfired. Charles Holmes walked off with his gun in his hand. After another officer arrived, Officer Thomas and the second officer followed Holmes and arrested him. Officer Thomas said Charles Holmes did not appear to be intoxicated when he was arrested; however, when directed on cross-examination to look *755 at the police report he had written, the officer noted that he had marked a box indicating that Charles Holmes was drunk.
Charles Holmes, aged thirty-two at the time of trial, stated that he worked as a "freelance mechanic." Mr. Holmes said that he and his brother, Jerry, were closer than most brothers; they hunted and fished together, and Charles helped Jerry lay the foundation for Jerry's house. Holmes explained that he was carrying his girlfriend's gun on July 15, 1994, to get it out of the house and away from his children. He drove to the 2400 block of Dumaine to have a drink with his brother and to talk about a planned fishing trip the next day. When Charles asked Jerry Holmes if he had seen their father, Jerry answered that he had not had time to go to the hospital; the comment angered Charles. The dialogue between the two brothers became increasingly more heated. Charles was offended by Jerry's comments, whereupon Charles pulled out the gun and fired above Jerry's head. Instead of becoming angry, Jerry simply said, "Junior, hold up. We got to talk. Let me get you a drink." Charles was putting his gun back into his pocket when he noticed that Kenneth Bazil had a gun out. Charles testified that he ran behind his brother to keep Jerry as a shield between himself and Bazil's gun; however, Charles' gun fired. According to Charles it went off accidently. Charles Holmes stated that he did not know if he had injured Jerry or not, but at that point he left.
Charles said he drove around the area, then parked, and walked around Dorgenois Street. He stopped to buy a half-pint of Dark Eyes and a fifth of Night Train. Later Charles went to another liquor store where he bought a half-pint of vodka. He maintains he drank most of the whiskey. The next thing he remembers is waking up in the First District Station where a policeman told him what had happened. Charles said he did not remember anything of the events Officer Thomas described when he testified at trial.

DISCUSSION:

A. Errors Patent
A review of the record reveals two errors patent. First, the trial court sentenced the defendant on the same day that the motion for a new trial was heard and denied. La.C.Cr.P. art. 873 provides that a sentence shall not be imposed until at least twenty-four hours after a motion for a new trial is denied unless the defendant expressly waives the delay. Here the defendant did not waive the delay. Failure to observe the delay is not harmless error even if the defendant does not raise it on appeal if the defendant challenges his sentence on appeal. However, because the defendant failed to file a motion to reconsider sentence within thirty days of the imposition of the sentence, we do not take cognizance of this error on appeal. State v. Martin, 93-1915, p. 2 (La.App. 4 Cir. 9/29/94); 643 So.2d 830, 832.
The second error concerns the defendant's sentence without benefit of parole, probation, or suspension of sentence on the attempted first degree murder conviction. On June 30, 1995, when the defendant was sentenced, La. R.S. 14:27D(1)[1] provided that if an offense was punishable by death or life imprisonment, an offender convicted of attempt should be imprisoned at hard labor for not more than fifty years. La. R.S. 14:27D(1) was silent as to parole, probation, or suspension of sentence at the time Charles was sentenced. Therefore, defendant's sentence without benefit of parole, probation, or suspension of sentence was illegal. State v. See, 467 So.2d 525 (La.1985). Accordingly, it is appropriate to set aside defendant's sentence for attempted first degree murder and remand the case for resentencing on that conviction.

B. Assignments of error
The defendant through counsel makes two assignments of error. First he complains of two errors in the assistant district attorney's closing argument: (1) the prosecutor's reference to the fact that Mr. Holmes was a hunter and had prior experience with guns, *756 and (2) the prosecutor's reading of only the first section of La. R.S. 14:15, the law governing the effect of intoxication, which was an attempt to deliberately mislead the jury. Secondly, the defendant contends that there was insufficient evidence to support the conviction. Because the second assignment of error addresses the sufficiency of the evidence, that error will be discussed first.

Sufficiency of the evidence
To determine the sufficiency of the evidence, this Court must decide whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Duncan, 94-1045 (La.App. 4th Cir. 12/28/94), 648 So.2d 1090, writ denied 95-0662 (La.6/30/95), 657 So.2d 1028. To be guilty of second degree murder, a defendant must have the specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1(A)(1). To be guilty of first degree murder, a defendant must have specific intent to kill or inflict great bodily harm upon a peace officer engaged in the performance of his lawful duties. La. R.S. 14:30(A)(2). An "attempt," as defined in La. R.S. 14:27, requires specific intent to commit a crime and commission of an act tending directly toward the accomplishing of his object. Specific intent is the state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1).
The defense contends the State failed to prove beyond a reasonable doubt that the defendant had specific intent to commit second degree murder and attempted first degree murder. He argues that the evidence the defense presented of the defendant's intoxication at the time of the offense was unrebutted by the State and that the defendant's intoxicated condition prevented him from forming the required specific intent.
The law concerning intoxication as an affirmative defense, La. R.S. 14:15(2), provides in part:
The fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial, except as follows:
* * * * * *
(2) Where the circumstances indicate that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
When intoxication is used as an affirmative defense to a criminal charge, the defendant has the burden of proving that condition at the time of the offense. State v. Mitchell, 572 So.2d 800, 803 (La.App. 4th Cir.1990), writ denied 576 So.2d 47 (La.1991). Where circumstances indicate that an intoxicated condition precluded the presence of specific criminal intent, the State must negate the defense beyond a reasonable doubt, i.e., the State must overcome the defense by evidence which proves beyond a reasonable doubt that the specific intent was present despite the alleged intoxication. Id.; State v. Smith, 94-2588 (La.App. 4th Cir. 3/27/96), 672 So.2d 1034, 1038. In State v. Lentz, 306 So.2d 683, 686 (La.1975), the Louisiana Supreme Court delineated the appellate court's inquiry on this issue; the Court found that the specific legal question is not when the requisite specific intent was formed, but rather whether, at the time of the offense, the defendant was so intoxicated as to preclude the existence of any specific intent on his part to commit the offense. State v. Mitchell, supra, 572 So.2d 800, 803 (La.App. 4th Cir.1990).
At trial the only testimony pertaining to the defendant's intoxication other than the defendant's self-serving account was that of the arresting police officer, Othello Thomas. When asked if the defendant appeared intoxicated, Officer Thomas said he did not. Nevertheless, on cross-examination, the officer admitted he checked the box on the police report that indicated the defendant was intoxicated.
When the defendant testified, he told of buying and drinking several bottles of whiskey *757 between the episode with his brother and the episode with the police officer; no evidence was presented of Charles Holmes' intoxication prior to the murder of Jerry Holmes. Charles Holmes testified to wandering aimlessly around the city until he awoke in the police station the next morning with no recollection of the night before. The defense presented no objective evidence that the defendant's level of intoxication was so great as to preclude specific intent. In fact, only the contradictory testimony of Officer Thomas was offered to establish the defendant's drunkenness.
After listening to all the testimony, the jury determined the issue of specific intent against the defendant and found he had the requisite specific intent when he killed his brother and when he attempted to kill the police officer. The jury obviously rejected the testimony of Charles Holmes. It is the role of the factfinder to weigh the respective credibilities of the witnesses and give each credit as it sees fit; the appellate court is not empowered to second guess the credibility determinations of the jury. State v. Cashen, 544 So.2d 1268 (La.App. 4th Cir.1989).
Despite his alleged intoxication at the time of the offenses, the defendant shot his brother in the back of the head from a very close range and failed to shoot Officer Thomas only because the gun misfired. Viewing all the evidence in the light most favorable to the prosecution, the State proved beyond a reasonable doubt that the defendant had the requisite specific intent to kill Jerry Holmes and Officer Thomas.
There is no merit in this assignment of error.

Closing argument errors
In this assignment the defendant avers that the trial court erred twice in allowing the prosecutor to engage in improper closing arguments. The defendant maintains first that the prosecutor argued facts not in evidence when the defendant was described as a hunter and secondly that the prosecutor erroneously stated the law in citing only La. R.S. 14:15(1) to the jury.
Article 774 of Louisiana Code of Criminal Procedure sets forth the scope of closing arguments as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and the law applicable to the case.
The argument shall not appeal to prejudice.
The state's rebuttal shall be confined to answering the argument of the defendant.
Although a remark may go beyond the scope set forth in the above article, it is considered to be harmless error unless this court is convinced that the remark influenced the jury so that it contributed to the verdict. State v. Sanders, 93-0001 (La.11/30/94), 648 So.2d 1272, cert. denied, ___ U.S. ___, 116 S.Ct. 2504, 135 L.Ed.2d 194 (1996); State v. Allen, 94-1895 (La.App. 4th Cir. 9/15/95), 661 So.2d 1078, writ denied 95-2557 & 95-2475 (La.2/2/96), 666 So.2d 1087:
If the appellate court finds that the prosecutor's argument contained improper remarks, a reversal is warranted only if the court is thoroughly convinced that the jury was influenced by the remarks and that they contributed to the verdict. State v. Jarman, 445 So.2d 1184 (La.1984). Credit should be accorded to the good senses and fairmindedness of jurors who have heard the evidence. State v. Dupre, 408 So.2d 1229 (La.1982); State v. Deboue, [496 So.2d 394 (La.App. 4 Cir.1986), writ denied, 501 So.2d 229 (La.1987).]
The defense objects on appeal to the following comment by the prosecutor:
He [the defendant] said that he was pissed off, and he admits to pulling this gun and firing at his brother one time. So, who knows, if this person who was in the Navy, and I'm sure he had some training with guns in the Navy, and this person that hunts
The defense attorney interrupted at that point with an objection that there was no testimony "as to that," and the trial court then admonished the jury that closing argument was opinion and argument rather than fact or evidence.
*758 Although the defense attorney argues there was no testimony to the facts the prosecutor mentioned, the defendant testified that he and his brother, Jerry, enjoyed hunting together and also that after high school he had a four to six year enlistment in the Navy. Thus, there was indirect testimony that the defendant had handled guns.
In considering all the evidence presented at trial, we find that the prosecutor's remarks about the appellant's familiarity with guns and hunting, even if improper, did not contribute to the verdict. State v. Allen, supra.
The defense next contends that the prosecutor's giving only the first paragraph of the law of the use of intoxication as a defense was an incorrect statement of the law deliberately calculated to mislead the jury.
In her closing argument, the prosecutor said:
He says that he doesn't remember any of that because he was intoxicated. Well, Louisiana law deals with intoxications in Louisiana Revised Statute 14:15. And, it states that: "The fact that an intoxication or drug condition of an offender at the time of the commission of the crime is immaterial except when the production of the intoxication or drug condition has been involuntary and the circumstances indicate that the condition was the direct cause of the commission of the crime, the offender is exempt from criminal responsibility." So what this says is that the only time you should consider if a person is intoxicated and the result of their actions by simply being intoxicated is if that intoxication is involuntary, and that's not so in this case.
The defense attorney objected, and the trial court commented that the attorney would have "opportunity to give a further explanation of that in ... [his] closing arguments."
The defense attorney's closing arguments are not part of the record; however, when the trial court gave the jury instructions, he cited the second paragraph of the Intoxication Statute, La. R.S. 14:15(2). He stated:
Ladies and gentlemen, the fact of an intoxicated or drugged condition of the offender at the time of the commission of the crime is immaterial except as follows: Where the circumstances that an intoxicated or drugged condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.
Here the trial court properly set out the law for the jury and corrected any error the prosecutor's recitation of that law might have caused.
Ample evidence was presented at trial to find the defendant guilty beyond a reasonable doubt of the crimes charged. Based upon the evidence presented at trial, this Court need not determine whether the remarks made in the closing argument were violations of La.C.Cr.P. art. 774, because they did not contribute to the verdict, and, therefore, were harmless even if erroneous. State v. Sanders, supra; State v. Allen, supra. A prosecutor's misstatements of the law during voir dire examination, or in his opening and closing remarks, do not require reversal of a defendant's conviction if the court properly charges the jury at the close of the case, as was done in the instant case. State v. Cavazos, 610 So.2d 127 (La.1992).
In the instant case as in Cavazos, the defendant shot the victim at close range[2] and left. We find that the court in Cavazos, 610 So.2d at p. 129, could have just as easily been writing about this case:
Any rational trier-of-fact could have determined on this evidence that relator specifically intended to kill the victim. [Citations omitted.] The jury ultimately returned its verdict under a correct instruction from the trial court and relator has failed to show a substantial probability that he was nevertheless deprived of a reliable determination of whether he had the specific intent to kill.
There is no merit in this assignment of error.

*759 Pro se assignments of error:

The defendant pro se lists five assignments of error designated as such by simply stating his argument and then indicating the pages and lines in the trial transcript where he thinks the error occurred. Thus, because he does not argue the error, the treatment of the errors is cursory.
Although not specifically designated as an assignment of error, we would categorize several of the defendant's complaints as amounting to a complaint that he had ineffective assistance of counsel. He notes that his attorney admitted rendering ineffective assistance. First, defendant points to his sentencing hearing where his attorney contendedas part of his argument supporting his motion for a new trialthat his (defense counsel's) assistance was ineffective because of a case load that did not give him time to attend to this case.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 So.2d 1030 (La.App. 4th Cir. 1990); State v. Reed, 483 So.2d 1278 (La.App. 4th Cir.1986). But an evidentiary hearing is not necessary where the record on appeal is sufficient to permit a determination of counsel's effectiveness at trial. State v. Seiss, 428 So.2d 444 (La.1983). Under such circumstances it is in the interest of judicial economy to dispose of the issue on appeal. State v. Ratcliff, 416 So.2d 528 (La.1982). State v. Garland, 482 So.2d 133 (La.App. 4th Cir. 1986); State v. Landry, 499 So.2d 1320 (La. App. 4th Cir.1986).
In evaluating defendant's claim of ineffective assistance of counsel we apply the standard set forth by this Court in State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir. 1992):
The relator's claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The relator must show that counsel's performance was deficient and that the deficiency prejudiced the relator. Counsel's performance is ineffective when it can be shown that he made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the relator if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the relator "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The relator must make both showings to prove that counsel was so ineffective as to require reversal.
Effective counsel has been defined to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance. State v. Seiss, supra, 428 So.2d at p. 449; State v. Ratcliff, supra, 416 So.2d at p. 531.
At the sentencing hearing in the case at bar, the trial court considered the allegations of ineffective assistance of counsel contained in the defendant's motion for new trial:
This Court was aware of both Mr. Nosacka's, generally aware, at least, of Mr. Nosacka's caseload prior to the beginning of this; but specifically aware of the fact that another trial happened before. But even in light of that, in terms of both observing what happened in the trial in this case and being privy both to the things that happened in and out of the trial, which, specifically, those things that happened in the trial in this case, this Court in no ways can say that Mr. Nosacka was ineffective in this matter, ineffective in this matter to a point where it would, in fact, entitle Mr. Holmes to a new trial.
The trial court considered this issue and found that the attorney's performance was adequate. Moreover, the record indicates *760 the defense attorney served effectively. It reveals that Mr. Nosacka actively examined prospective jurors, made objections during the voir dire examination, argued persuasively (but unsuccessfully) that the plea on the second charge should be changed to not guilty by reason of insanity caused by intoxication, made an opening statement, cross-examined every witness except the victim's widow, made objections during trial testimony, and made a closing statement. The record does not show that the attorney's performance was deficient.
The defendant's next references his own testimony at the sentencing hearing. He makes two points. First he stated that his initial attorney was with him through the motion hearing and up to trial; then Mr. Nosacka replaced him. The defendant complained that Mr. Nosacka did not "come to see him" as the first attorney had done and "didn't know enough about it." This is basically the same argument the attorney made which was considered above. Furthermore, the trial court answered it by saying the attorney had performed adequately. The defendant's second point from that assignment of error concerns the fact that the defendant never apologized to his sister-in-law or to anyone in his family. At the sentencing hearing, the defendant said that although he had been sorry for his actions, his first attorney told him not to call his sister-in-law or to say he was sorry. Here, the defendant seems to blame his first attorney for what he can not blame on the second attorney.
There is no merit in defendant's first pro se assignment of error.
In his next pro se assignment of error, and the first to be formally denominated as such, the defendant argues that the trial court erred when it forced counsel to trial without sufficient time to prepare. In all criminal proceedings, an accused is guaranteed the right to counsel. U.S. Const. amend. VI; La. Const. art. I, § 13 (1974); State v. Knight, 611 So.2d 1381 (La.1993). The right to counsel's assistance is a fundamental right. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Although formal appointment of counsel does not satisfy the constitutional guarantee, a short period of time is sometimes sufficient for trial preparation. See Avery v. Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377 (1940). Prejudice to a defendant may be presumed when counsel fails to subject the State's case to a meaningful adversary test. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).
The docket master and minute entries here indicate that the Orleans Indigent Defender's Program (OIDP) was appointed to represent the defendant. Hans Sinha, appointed by OIDP to handle Division "E" cases, represented the defendant from his arraignment on August 25, 1994, through a motion hearing held on January 18, 1995. Mark Nosacka's name first appears in the record on March 14, 1995. Both attorneys, Sinha and Nosacka, seem to have been present at the pre-trial conference on April 7, 1995. The defendant was represented by Mark Nosacka of OIDP at trial on May 24-25, 1995. The record is silent as to the date Mark Nosacka assumed the defendant's case. Because the record does not provide sufficient evidence for a ruling on this issue, it is more appropriate for consideration in a post conviction proceeding where an evidentiary hearing can be held.
The defendant's pro se assignments of error designated by him as his second and third question the sufficiency of the evidence. He maintains that the trial court erred when it refused to grant a new trial on counsel's motion that the jury's verdict was contrary to the law and evidence and also that it erred when it allowed the jury to convict on a second degree murder charge rather than a manslaughter charge. The sufficiency of the evidence was considered in the defense counsel's first assignment of error.
In the pro se assignment of error designated by the defendant as his fourth, the defendant states that the trial court erred when it denied counsel's motion to change the plea from not guilty to not guilty by reason of insanity. The defendant makes no argument of the specific error here. Assignments of error that are not briefed are considered abandoned. Rule 2-12.4, Uniform Rules Courts of Appeal; State v. Sparrow, supra, *761 612 So.2d at p. 196; State v. Bray, 548 So.2d 350 (La.App. 4th Cir.1989).
In his last pro se assignment of error the defendant argues that the trial court erred when it allowed the district attorney to engage in improper closing arguments. This argument was discussed and found to be meritless in the defense attorney's second assignment of error.

DECREE
For the foregoing reasons, the defendant's convictions are both affirmed. However, defendant's sentence on the attempted first degree murder conviction is vacated and remanded for resentencing in accordance with this opinion. Defendant's sentence on the second degree murder conviction is affirmed.
CONVICTIONS AFFIRMED; SENTENCE FOR SECOND DEGREE MURDER AFFIRMED; SENTENCE FOR ATTEMPTED FIRST DEGREE MURDER VACATED AND REMANDED.
NOTES
[1] Act 988 of 1995 amended La. R.S. 14:27D(1) to prescribe that the sentence be "without benefit of parole, probation, or suspension of sentence." However, it did not go into effect until August 15, 1995.
[2] See also State v. Wallace, 612 So.2d 183, 190 (La.App. 1 Cir.1992) where the court held that specific intent could be inferred from the mere fact that the shooting was at close range.